UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
Roy Den Hollander,

        Plaintiff on behalf of himself        Docket No. 07 CV 5873 (MGC)
        and all others similarly situated,        ECF

    -against-

Copacabana Nightclub,
China Club,
A.E.R. Nightclub,
Lotus,
Sol, and
Jane Doe Promoters,

        Defendants.
-----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFF'S MOTION FOR DISQUALIFICATION OF JUDGE CEDARBAUM**

Dated: October 7, 2007

Roy Den Hollander (RDH 1957)
545 East 14 Street, 10D
New York, NY 10009
(917) 687 0652

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ………………………………………………………………… ii

ARGUMENT …………………………………………………………………………………. 1

    Introduction ………………………………………………………………………… 1

    Legal Bases for Disqualification ……………………………………………………. 1

    28 U.S.C. § 455(a) Lack of Impartiality …………………………………………… 3

    28 U.S.C. § 455(b)(1) Personal Bias and Prejudice ……………………………….. 5

    No Fair Notice ……………………………………………………………………… 6

CONCLUSION ……………………………………………………………………………... 10

**TABLE OF AUTHORITIES**

**United States Constitution**

Fifth and 14th Amendments ………………………………………………..……… 2, 6

**Statutes**

28 U.S.C. § 144 …………………………………………………………….……… 2

28 U.S.C. § 455 ……………………………………………………………...…2, 3, 4, 5

Fed. R. Civ. P. 16 …………………………………………………………………. 3

**Cases**

Alger v. Hayes, 452 F.2d 841(8th Cir. 1972) …………………………………………. 1

Berger v. United States, 255 U.S. 22, 41 S. Ct. 230, 65 L. Ed. 481 (1921) ……………… 5 n.1

Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693, 98 L. Ed. 884 (1954) …………………… 6 n.2

Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856,
6 L.Ed.2d 45 (1961) …………………………………………………………….. 4, 9

Craig v. Boren, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) …………… ….....… 9

In re Murchison, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955) ……………….…...…… 2

Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 108 S. Ct. 2194,
100 L. Ed. 2d 855 (1988) …………………………………………………………….…….. 3

Liteky v. United States, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) .. 1, 2, 3, 4, 5

Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1965) .. 4, 8, 9

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652,
94 L. Ed. 865 (1950) ……………………………………………………………….…..…… 7

Nichols v. Alley, 71 F.3d 347 (10th Cir. 1995) ……………………………….….…... 2, 10 n. 3

Offutt v. United States, 348 U.S. 11, 75 S. Ct. 11, 99 L. Ed. 11 (1954) ……………....…… 2

Seidenberg v. McSorleys' Old Ale House, Inc., 308 F. Supp. 1253 (1969) …..…….…. 4, 9, 10

Seidenberg v. McSorleys' Old Ale House, Inc., 317 F. Supp. 593 (1970) ……….…... 4, 9, 10

United States v. Brinkworth, 68 F.3d 633 (2d Cir. 1995) ……………………..………… 2

United States v. Jordan, 49 F.3d 152 (5th Cir. 1995) …………………………….……… 2, 3

Ward v. Monroeville, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972) ……..……….. 1

**Treatises**

Rotunda & Nowak, Treatise on Constitutional Law, 3rd edition ………………..………. 6

**Other**

Thode, Reporter's Notes to Code of Judicial Conduct, pp. 60-61 (1973) ……….………… 5

Webster's New World, Roget's A-Z Thesaurus, 1999 edition ……………….…………. 1

**ARGUMENT**

Introduction

      Although the plaintiff-attorney acting on behalf of the class of men made an oral request at the October 3rd Conference that Judge Cedarbaum disqualify herself, which was denied during the Conference, the request did not meet the requirement that oral motions must be officially recorded. Alger v. Hayes, 452 F.2d 841, 843 (8th Cir. 1972)(citations omitted). Since the request never rose to the status of a motion, this is the initial motion by the plaintiff-attorney acting on behalf of the class for disqualification of Judge Cedarbaum on the grounds of the appearance of sexual bias, sexual prejudice, and partiality against the class of men, including the named plaintiff.

      The term "bias" implies a mental leaning in favor of or against someone or some persons that interferes with impartial judgment. Webster's New World, Roget's A-Z Thesaurus, 1999 edition.

      The term "prejudice", similar to bias but stronger, implies preconceived and unreasonable judgment or opinion marked by suspicion, fear or hatred. Id.

      The term "partiality" also includes bias and prejudice but is broader and also includes "intolerance". Id.; c*f*. Liteky v. United States, 510 U.S. 540, 552, 114 S. Ct. 1147, 1156, 127 L. Ed. 2d 474, 489 (1994)(Scalia, J. wrote the majority opinion).

Legal Bases for Disqualification

      All parties to a case have a constitutional right to a neutral and detached judge. Ward v. Monroeville, 409 U.S. 57, 62, 93 S. Ct. 80, 84, 34 L. Ed. 2d 267, 272 (1972).

> A fair [hearing] in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the [hearing] of cases. But our system of law has always endeavored to prevent even the probability of unfairness. … [so] to perform [the

1

courts'] high function in the best way "justice must satisfy the appearance of justice." <u>In re Murchison</u>, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942, 946 (1955)(words in quotation marks from <u>Offutt v. United States</u>, 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11, 14 (1954)(Frankfurter, J.)).

The federal statutes used for protecting a class of men and an individual male from an unfair tribunal are 28 U.S.C. § 144 and 28 U.S.C. § 455. The purpose behind §§ 144 and 455 is to promote public confidence in the judicial process; therefore, the question is not whether a judge is actually biased, prejudiced, or partial toward a party, but whether her actions make it appear so. <u>Liteky v. United States</u>, 510 U.S. 540, 548, 114 S. Ct. 1147, 1154, 127 L. Ed. 2d 474, 486 (1994); <u>United States v. Brinkworth</u>, 68 F.3d 633, 637 (2d Cir. 1995)(citing H.R. Rep. No. 1453, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355). The courts consider outward manifestations and the reasonable inferences drawn from them in deciding whether there exists an appearance sufficient for disqualification. <u>Nichols v. Alley</u>, 71 F.3d 347, 351 (10th Cir. 1995). Procedurally, § 144 requires an affidavit or affirmation, but it's substantive elements are encompassed by § 455.

This motion to disqualify Judge Cedarbaum for the appearance of sexual bias, sexual prejudice, and partiality toward the named plaintiff and the putative class of men relies on 28 U.S.C. §§ 455(a) & (b)(1). To disqualify her for violating their due process rights that every litigant have fair notice of a court's proceedings, the motion relies on the fundamental fairness doctrine of the due process clauses in the Fifth and 14th Amendments to the U.S. Constitution.

These type of motions are fact driven and must not be determined by comparisons to other cases. <u>United States v. Jordan</u>, 49 F.3d 152, 157 (5th Cir. 1995)("each … case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.").

2

28 U.S.C. § 455(a) Lack of Impartiality

§ 455(a) requires a judge to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned."  § 455(a) expands the protection of § 455(b) but also duplicates some of its protection as well, such as with regard to bias and prejudice.  Liteky, 510 U.S. at 552, 114 S. Ct. at 1156, 127 L. Ed. 2d at 489.  Subsection (a) requires recusal in some circumstance where subsection (b) does not because it covers all aspects of partiality and not merely those specifically addressed in subsection (b).  Liteky, 510 U.S. at 553 n. 2.

In determining whether to disqualify, the courts look to see whether a reasonable person given all the facts would question whether the judge was impartial.  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 861, 108 S. Ct. 2194, 2203, 100 L. Ed. 2d 855, 873 (1988)(citing with approval the 5th Circuit decision appealed from).  Or, stated differently, how the events appear to an objective observer, and "an observer of our judicial system is less likely to credit judges' impartiality than the judiciary."  Jordan, 49 F.3d at 157.

This motion requests Judge Cedarbaum's disqualification under § 455(a) for her appearance of intolerance toward the named plaintiff and the putative class on whose behalf this action was brought.  During the October 3rd Case Management and Scheduling Conference pursuant to Fed. R. Civ. P. 16, Judge Cedarbaum repeatedly and with animosity prevented the named plaintiff from completing his answers to her questions by constantly interrupting him. (Affirmation ¶ 12).  The plaintiff was not running off at the mouth with long-winded and circular answers but trying to explain the factual allegations and the law on which the case was based.

For example, in trying to answer the Judge's question as to what legal authority existed for state action in regulating facilities that sold alcohol for consumption on the premises, the named plaintiff, amid numerous antagonistic interruptions, tried to recount two decisions

3

factually similar to this action that Judge Cedarbaum was apparently unaware of: Seidenberg v. McSorleys' Old Ale House, Inc., 317 F. Supp. 593 (1970)(Mansfield, J. found state action in granting plaintiff's motion for summary judgment); Seidenberg v. McSorleys' Old Ale House, Inc., 308 F. Supp. 1253 (1969)(Tenney, J. found state action in denying defendant's motion for a Rule 12(b)(6) dismissal). In the McSorleys' case, two females from N.O.W. were refused service at McSorleys' Old Ale House because of their sex. In the process of explaining these two decisions, Judge Cedarbaum kept interrupting that Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1965), was dispositive, which is not so because the Supreme Court factually distinguished Moose Lodge from Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961), which was the case relied on in the McSorleys' decisions. This would have been made clear had the plaintiff been allowed to finish his answers.

Throughout the 40 minute conference, Judge Cedarbaum persistently and inimically interrupted the named plaintiff acting on behalf of the class which demonstrated an appearance of intolerance for a lawsuit aimed at eliminating a form of invidious discrimination against men.

§ 455(a) requires that the judge's lack of impartiality derive from judicial predispositions that go beyond what is normal and acceptable. Liteky, 510 U.S. at 552, 114 S. Ct. at 1155-56, 127 L. Ed. 2d at 489. Judicial conduct during the course of a hearing that is critical or disapproving of, or even hostile to, counsel, the parties, or their case, may support a partiality challenge if it reveals an opinion that derives from an extrajudicial source and reveals such a high degree of antagonism as to make fair judgment impossible. See id. 510 U.S. at 555, 114 S. Ct. at 1157, 127 L. Ed. 2d at 491.

The October 3rd Conference was the very first before Judge Cedarbaum, and the plaintiff-attorney had never appeared in any prior proceeding before her. The source of Judge Cedarbaum's predisposition for her apparent intolerance toward the plaintiffs' could only have come from outside the court—most likely the result of the past 40 years of feminism turning man into the new post-modern devil.[1] Further, Judge Cedarbaum kept referring to the type of discrimination alleged as defendant nightclubs charging males more for drinks than females, but that accusation does not appear anywhere in the papers filed with the Court. It is, however, the common perception among the public as to what occurs on Ladies Nights, indicating that Judge Cedarbaum's apparent intolerance was formed outside of judicial proceedings.

<u>28 U. S. C. § 455(b)(1) Personal Bias and Prejudice</u>

Disqualification under § 455(b)(1) also requires an objective basis. What matters is not the reality of bias or prejudice but its appearance. <u>Liteky</u>, 510 U.S. at 548, 114 S. Ct. at 1154, 127 L. Ed. 2d at 486. Even if the judge does not have any personal bias or prejudice toward a party or group, the appearance of such that reasonably leads one to question the judge's impartiality calls for disqualification. Thode, <u>Reporter's Notes to Code of Judicial Conduct</u>, pp. 60-61 (1973).

In addition to the continuing interruptions by Judge Cedarbaum (Affirmation ¶ 12), her Honor also verbally disparage the plaintiff-attorney, and presumably the class of men on whose behalf this civil rights suit was brought, with a vituperative invective communicating that it was questionable whether the man standing before her was an attorney at all. (Affirmation ¶ 13). This remark evinces a bias and prejudice against guys fighting for their rights when their success will end up reducing the preferential treatment given to females. When males pay more for the

---

[1] Prejudice towards a class inferred prejudice toward individual members of that class. *See* <u>Berger v. United States</u>, 255 U.S. 22, 27-29 41 S. Ct. 230, 231, 65 L. Ed. 481, 483-84 (1921)

5

same admission, the economics permit the defendant clubs to charge females less. Judge Cedarbaum's appearance of bias and prejudice in her denigrating remark most likely has its source in the continuing culture wars of America.

The normality of television talk shows with their catchy sound bites of personal destruction is not the normality in a court of law that's interested in the whole story, not just a sliver that serves a predisposition. Nor is it an acceptable belief in court, as with talk shows, that civility in allowing someone to finish their answer is a sign of weakness. Taken as a whole, the 40 minute conference could only be viewed by a reasonable man in post-modern America as raising serious questions of an appearance that Judge Cedarbaum has a preconceived and unreasonable opinion marked by suspicion, or at least a mental leaning against the named plaintiff and the putative class of men in this civil rights action.

No Fair Notice

The Due Process clauses of the Fifth and 14th Amendments guarantee a fundamentally fair governmental procedure when citizens' rights are at stake.[2] Rotunda & Nowak, Treatise on Constitutional Law, Vol. 3 § 17.8, 3rd edition. Fundamental fairness includes providing the persons whose interests are in jeopardy from court action or inaction with a form of notice reasonably designed to apprise the party of the nature of a proceeding. *See* id. at "Notice". "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information,

---

[2] The right raised in this case is equal protection under the law, which is a right guaranteed by both the 14th Amendment and the "due process clause" of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 498-99, 74 S. Ct. 693, 694, 98 L. Ed. 884, 886 (1954).

6

and it must afford a reasonable time for those interested to make their appearance." <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865, 873 (1950)(citations omitted). This right to be heard has little reality or worth unless one is informed that a particular matter will be addressed. *See* <u>id.</u>

Judge Cedarbaum denied the due process rights of the named plaintiff and the putative class of men by holding a hearing on AER's motion to dismiss without providing proper notice to the plaintiffs. She also made the finality of that hearing a *fait accompli* by indicating there would be no other subsequent oral hearing on motions to dismiss even though the four other defendants had not yet filed their motions. She accomplished this by refusing to appoint the plaintiff-attorney as interim class counsel which allowed her to treat the case as a *pro se* matter. *Pro se* matters under her rules are not allowed a hearing.

The October 3rd Case Management and Scheduling Conference, at which the beginning stages of a case's tentative schedule are normally set, was turned into a hearing on the named plaintiff and the putative class of men's opposition to defendant AER's motion to dismiss. The problem was that the plaintiff class' opposition wasn't due until October 17th with a hearing set for October 25th. The original date for the Case Management and Scheduling Conference was October 16th. Had the Court kept to that date, the plaintiff-attorney would have already conducted the necessary legal research and written an opposition, so by using the original date of October 16th as a hearing on the plaintiff class' opposition to dismissal would not have jeopardize the equal protection rights of the named plaintiff and the putative class of men. But the Court chose not to do that. Instead, after receiving on Friday at 4:46 PM, September 28th, AER's motion to dismiss, the Court, three days later, began on Monday afternoon, October 1st, to move up the Case Management and Scheduling Conference to an earlier date. By Tuesday

morning, October 2nd, the Conference's new date was set for the very next day, Wednesday, at 10:30 AM on October 3rd. Even had the plaintiff class been notified, which it wasn't, to come prepared to counter AER's motion to dismiss, it would have been impossible to complete the necessary research and organize it into a cogent argument in opposition. It may be that the changing of the original Conference to an earlier date was pursued, perhaps with some fortuity, perhaps not, to maximize the chances that the plaintiff-attorney would not be in a position to counter Judge Cedarbaum's arguments for dismissing the case.

      The substance of Judge Cedarbaum's arguments for dismissal were similar to those in AER's motion to dismiss papers. Her Honor apparently adopted AER's key argument that there is no state action involved in the defendants discriminating against men. The Judge and AER argued that licensing alone by the State of New York or New York City is not state action and no federal court has held such, which is correct. But that's not the test for state action. The entire nature of the relationship between New York's Division of Alcoholic and Beverage Control and the New York City Department of Consumer Affairs with the defendant nightclubs must be examined. Normally that's done in discovery—not a Scheduling Conference. The Judge and AER also relied on the U.S. Supreme Court decision: <u>Moose Lodge No. 107 v. Irvis</u>, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1965), as holding that a liquor license did not infer state action. But neither the Judge nor AER pointed out that this case was distinguishable from <u>Moose Lodge</u>. Moose Lodge No. 107 was a private club; the defendants here are all public accommodations. When appraised of that fact by the plaintiff-attorney, her Honor stated she doubted whether the phrase "public accommodation" even appeared in the <u>Moose Lodge</u> case. It does—five times. The Judge and AER, in their arguments for dismissal, also failed to mention two decisions, by two different judges, in the very same court that Judge Cedarbaum sits and

8

where this action was brought. Those decisions in the McSorleys' case found state action when McSorleys' Tavern, regulated by the New York State Division of Alcoholic and Beverage Control, discriminated against two females from N.O.W. by refusing to serve them because of their sex. Seidenberg v. McSorleys' Old Ale House, Inc., 317 F. Supp. 593 (1970)(Mansfield, J. found state action in granting plaintiff's motion for summary judgment); Seidenberg v. McSorleys' Old Ale House, Inc., 308 F. Supp. 1253 (1969)(Tenney, J. found state action in denying defendant's motion for a Rule 12(b)(6) dismissal). Both of the McSorleys' decisions relied on Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), for finding state action. When the U.S. Supreme Court decided Moose Lodge, that Court distinguished Moose Lodge from Burton, in part, by stating, "Unlike Burton, the Moose Lodge building is located on land owned by it, not by any public authority. Far from apparently holding itself out as a place of public accommodation, Moose Lodge quite ostentatiously proclaims the fact that it is not open to the public at large. Nor is it located and operated in such surroundings that although private in name, it discharges a function or performs a service that would otherwise in all likelihood be performed by the State. In short, while [in Burton there] was a public restaurant in a public building, Moose Lodge is a private social club in a private building." While Burton isn't completely similar to this case, Moose Lodge is clearly distinguishable. But both Judge Cedarbaum and AER ignored that.

     They also ignored that the U.S. Supreme Court cited with approval to the 1970 McSorleys' decision on state action when it stated, "both federal and state courts uniformly have declared the unconstitutionality of gender lines that restrain the activities of customers of state-regulated liquor establishments…." Craig v. Boren, 429 U.S. 190, 208, 97 S. Ct. 451, 462, 50 L. Ed. 2d 397, 413 (1976)(This is dicta, although persuasive dicta.)

9

In addition to the deprivation of the due process rights of the plaintiff class by failing to provide adequate and timely notice, Judge Cedarbaum has succeeded in reducing a civil rights class action, on behalf of thousands of men, into a *pro se* action by a lone, individual male. Reality would seem to imply that it is more publicly palatable to dismiss a case against one, lone man than thousands, although in this day and age in America, it is becoming increasing commonplace to ignore the rights of all men.

A dismissal without certifying the class, likely assures that no other man will bring another individual or class suit for the same or similar invidious discrimination because of the expense, judicial hostility, and the barrage of social opprobrium engendered by his audacity to fight for the rights of a man or men. The end result will be that questionable procedural decisions will enshrine invidious discrimination against males while in virtually identical situations, such as the McSorleys' case, females rights will remain protected.

## **CONCLUSION**

Judge Cedarbaum's conduct during the 40 minute conference revealed a high degree of favoritism to the beneficiaries of the defendant nightclubs' discrimination—females. Every extra dollar a guy pays is a dollar a female doesn't pay for admission. The Conference also revealed a high degree of antagonism to the named plaintiff and the class of men on whose behalf he was acting. Both the favoritism and antagonism make a fair judgment in this civil rights case near impossible.[3]

If there is any doubt about Judge Cedarbaum's appearance of sexual bias, sexual prejudice, and partiality, just switch the sexes. Consider how the named plaintiff would have

---

[3] Where the question is a close one, then the judge should disqualify herself. Nichols, 71 F.3d at 352.

been treated had an accident of nature made him a female, and she was suing on behalf of thousands of other females because the defendant nightclubs charged ladies more for admission than guys on "Men's Nights".

Dated: New York, NY /S/
      October 7, 2007 _____
Roy Den Hollander (RDH 1957)
545 East 14 Street, 10D
New York, NY 10009
(917) 687 0652

11