UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Roy Den Hollander,

        Plaintiff on behalf of himself          Docket No. 07 CV 5873 (MGC)
        and all others similarly situated,        ECF

  -against-                                        **REPLY AFFIRMATION IN**
                                                  **SUPPORT OF MOTION TO**
                                                  **DISQUALIFY**
Copacabana Nightclub,                      **JUDGE CEDARBAUM**
China Club,
A.E.R. Nightclub,
Lotus,
Sol, and
Jane Doe Promoters,

        Defendants.
------------------------------------------------------------x

      I, Roy Den Hollander, an attorney admitted to practice in the State of New York and the U.S. Southern District Court of New York, affirm under the penalty of perjury in accordance with 28 U.S.C. § 1746 the following:

      1. I am the named plaintiff and attorney who filed this civil rights, 42 U.S.C. § 1983, class action, Fed. R. Civ. P. 23(b)(2), for the violation of the 14th Amendment equal protection rights of a class of thousands of men, which includes me. This affirmation is filed in reply to the attorney for Lotus, Deborah Swindells Donovan, opposition to the motion to disqualify Judge Cedarbaum for the appearance of sexual bias, sexual prejudice and partiality against the putative class of men.

      2. Attorney Donovan resorts to a tactic often used by self-righteous feminists[1] and their sycophants over the past forty years in this country: attack a man for daring to exercise his

---

[1] Russ Limbaugh is often credited with inventing the term "feminazi" in 1992. I disagree, since I've been using the term since 1991, not in court of course. At the very least, I should be credited as a co-author. The on-line version of

freedom of speech in an effort to silence what they don't like and win something they don't deserve—in this case a denial of my motion for recusal. (Donovan Declaration ¶ 11). It doesn't matter to attorney Donovan and those of like intolerance that "[t]he proponents of the First Amendment … were determined that every American should possess an unrestrained freedom to express his views, however odious they might be to vested interests whose power they might challenge." Feldman v. United States, 322 U.S. 487, 501, 64 S. Ct. 1082, 1089, 88 L. Ed. 1480, 1419 (Black, J. dissenting)(1944). It also doesn't matter to her how well reasoned and factually based the essays she published in her Exhibit A are. Clearly attorney Donovan wouldn't object had the sexes in the essays been trans-gendered, since, as with all conformists, popular acceptance by others of what they say is most important.

     3. The issue raised by attorney Donovan in the essays in her Exhibit A is not a matter of popularity over who can genuflect the most before feminist dogma; it's the cornerstone of this allegedly free nation—the First Amendment right to enter the market place of ideas no matter what group may be agitated. Attorney Donovan is asking a Federal Court to deny a motion based on a plaintiff's exercise of this freedom outside the courthouse and having nothing to do with the legal issues in this case. Attorney Donovan just doesn't appreciate anyone challenging the power of feminist zealots in this country, especially when the challenge, as in this case, is to the deprivation of the rights of men. She, therefore, uses essays critical of the feminist special interest group to stereotype me as biased against all females. (Donovan Declaration ¶ 11, Donovan Memorandum pp. 8, 9).

---

the Merriam-Webster dictionary defines feminazi as "an extreme or militant feminist." That's probably the equivalent of feminist zealot or self-righteous feminist.

4. Attorney Donovan does not challenge the accuracy of the essays, only that they offend her personally[2] and the overly subjective sensitivities of self-righteous feminists. The law, theoretically at least, does not make decisions based on the subjective standards of members of powerful special interest groups. Subjective sensitivities that cry offensiveness do not trump the First Amendment right to free speech. Attorney Donovan's, and millions like her, unwillingness to tolerated speech they find offensive is not a compelling interest that allows for the punishment of the exercise of free speech by having a court deny that speaker's motion.

5. Attorney Donovan cites to six essays, all of which except for one, are not available to the public, although I'd be willing to publish them if any publisher makes me an offer.[3] Since the essays are not available to the public, but exist only on a couple of computers, the only way attorney Donovan could have obtained access is by hacking into those computers. That's a violation of 18 U.S.C. § 1030(a)(2)—a federal felony, which is punishable by a fine or imprisonment of not more than ten years. Attorney Donovan indicates that the computer she hacked into, or some third person hacked into on her behalf, was connected to the internet. (Donovan Declaration ¶ 11). She doesn't, however, give the computer's address, perhaps in an effort to disguise her apparent violation of the law.

6. Attorney Donovan argues based on the essays that my motion to have Judge Cedarbaum dismissed for the appearance of sexual bias against the plaintiff class of men should be denied because the plaintiff is a "misogynist." Personally, I disagree with the characterization: one can't hate that which one lusts after. For example, I doubt attorney Donovan hates chocolate, although she might not like what it does to her.

---

[2] And no, the personal is not politically—it's private, but attacking the personal often gets results in America these days.

[3] The only one of the six essays to which the public has access and of which I am particularly proud is attached as Exhibit A.

7. Also based on the illegally obtained essays, attorney Donovan argues that I have an "unrelenting bias against females". (Donovan Declaration ¶ 11). The essays criticize feminist zealots—a sect to which all ladies do not belong, much to the annoyance of the sect. The essays are punchy, hard-hitting, intentionally provocative, well-written, well-reasoned, and factually based. Just because they stroke someone's fur the wrong way is too bad—this isn't Russia[4], and, in fact, they're meant to agitate. Apparently they've been successful even though, until now, not legally available to the public. By putting the essays in her Declaration, attorney Donovan has published them without the author's permission.

8. The *sine qua non* of bias is "unreasoned" of which the essays in Donovan's Exhibit A are not. I'll match their reasoning against any feminist, irrational proselytism that attorney Donovan cares to roll out. More importantly, however, is that the issue in this motion to disqualify a judge is not how bias one of parties may be, but whether the Judge has exhibited an appearance of not acting fairly towards that party. The essays are as irrelevant as attorney Donovan's client, Lulu's LLC or Lotus, repeated failure to pay its New York State taxes. Exhibit B.

9. The above seven paragraphs illustrate the result of the tried and true tactic of self-righteous feminists and their sycophants to distract from the merits of an argument by engaging in *ad hominem* attacks of calling their opponents "biased" or "misogynist" or some other opprobrium. It's always easier to make a dissembling, damaging allegation than to refute it, which is why the political correctionalists in America seem incapable of sticking to the issues when someone dare oppose their world view. Whenever dissent rears up to threaten the

---

[4] Russia hasn't changed as much as the New York Times pretends. Today, vocal opposition to a powerful group no longer ends in the Gulag; it's a straight trip to the grave.

unanimity of belief among the chosen, it is crushed with a choir of vituperation against the person who raises alternative ideas.

    10. Now to the merits of the recusal motion. Attorney Donovan is correct when she says, "[a]t initial conferences, many judges discuss the merits of a case …." (Donovan Declaration ¶ 2). But they don't argue on behalf of a defendant's motion to dismiss when that motion isn't scheduled for oral argument until three weeks later. By the Judge extensively questioning me on the arguments and authorities in A.E.R. Lounge's ("AER") motion to dismiss just five days after the filing of that motion, the Judge violated her own time frame for allowing preparation for oral opposition to a motion. Attorney Donovan pulls a neat trick in her Declaration at ¶ 7 by claiming I now have more time to "submit written papers." One of many factors creating an appearance of partiality wasn't the time to submit written papers, but that the Judge, in effect, held oral argument on the dismissal motion just five days after its filing at a conference arranged by the Court for which I had one day's notice.

    11. AER's motion to dismiss left out two key decisions from the Southern District Court of New York that held "state action" did exist for a tavern regulated by the New York State Division of Alcoholic and Beverage Control ("ABC"). During Judge Cedarbaum's antagonistic grilling of me on the "state action" issue, she didn't know about those two decisions until I raised them. A reasonable inference is that the Judge didn't know about the two decisions because AER's motion left them out.

    12. Attorney Donovan creates a false impression with the best of them in her Declaration at ¶ 3. She claims Judge Cedarbaum "simply asked questions" of me about "state action". Not so, the judge consistently interrupted my answers with manifest animosity the likes of which I had never witness in any court before.

13. Attorney Donovan down plays the importance of Judge Cedarbaum's decisions at the October 3rd Scheduling Conference. (Donovan Declaration ¶¶ 5, 6). When the Complaint was filed, the status of the case was a putative class action in which I, as an attorney, could file motions and take other actions on behalf of the class, which is the law. Now, however, as the result of Judge Cedarbaum's refusal to appoint me interim counsel for the class and her refusal to make a decision on class certification, the case is as the Judge said, "*pro se*". The Judge can later make a decision on class certification, but that's assuming there is a "later". Judge Cedarbaum repeatedly questioned the defendants as to why they hadn't moved earlier to dismiss the action and remarked she couldn't understand their delay. A clear indication as to where this case and the rights of thousands of men are going—under the stiletto heel of preferential treatment for females.

14. The crucial part of the Judge's decisions is their impact. Had Judge Cedarbaum decided to first make a decision on class certification, as I requested, a decision for certification would have put pressure on the defendants to settle by halting their invidious discrimination against men. Any settlement would not have required the defendants to pay money to the class of men, nor any attorney's fees to me. A settlement would simply have put a stop to guys economically subsidizing feminine desires to party at certain night clubs. The ladies would then have to pay as much as men do to enter a club—sounds fair to me. On the other hand, had the Judge decided against certification, it would not have gone down well with the public because it would have ruled against thousands of men whose civil rights were being violated. It would also have given me a chance, not a certainty, just a chance, to have the U.S. Court of Appeals for the Second Circuit review her denial of class certification. By putting off any decision on class certification, the Judge reduced the case to one lone individual male fighting for his rights. A

dismissal against one guy is not going to cause any ripples in this society.  More importantly, it will send a message, along with Donovan's efforts to chill the free speech of men, that anyone wanting to bring a similar class action should forget it.  Even if he has the time and energy, he'll be castigated for exercising his rights under the U.S. Constitution only to end in the street with the courthouse doors slammed in his face.

15.  In the majority of civil rights cases, the class certification decision is made before any decision on motions to dismiss.  The Second Circuit has urged the district courts to make the class certification "as soon as practicable after the ***commencement*** of [the] action."  Henry v. Gross, 803 F.2d 757, 769 (1986)(Court's emphasis).  And the Seventh Circuit discourages pre-certification motions to dismiss.  Koch v. Stanard, 962 F.2d 605, 607 (1992).

16.  Attorney Donovan keeps raising state action as a jurisdictional requirement that must be decided first—it is not.  (Donovan Declaration ¶¶ 3, 6, 8, 10).  Personal jurisdiction exists because the parties live or do business in New York State, and subject matter jurisdiction exists because the question to be resolved is a federal question.  The Judge's questioning did not focus on these jurisdictional issues but the 14th Amendment's Equal Protection clause, which has two requirements: "state action" and invidious discrimination.  Those are substantive questions not jurisdictional.  Attorney Donovan initially defends the Judge's grilling me on these issues at the conference on the grounds that they were substantive.  She considers the issues substantive in ¶ 2 of her Declaration because it serves the argument she makes there, but in later paragraphs, she claims the "state action" issue is procedural because it serves her arguments in those paragraphs.  Apparently attorney Donovan believes she can have her way regardless of the inconsistency of her reasoning.  I'll go with the reasoning of the U.S. Supreme Court that the 14th Amendment embodies and extends to all individuals substantive protections from "state action".  Jett v.

Dallas Independent School District, 491 U.S. 701, 731, 109 S. Ct. 2702, 2720, 105 L.Ed.2d 598, 624 (1989).

17. Attorney Donovan prevaricates when she claims the conference focused solely on the "state action" issue. (Donovan Declaration ¶ 10). The judge brought up the invidious discrimination issue a number of times. The Judge even focused on the details of exactly how much more guys were charged to enter a club than ladies and raised the unpopularity of the lawsuit in connection with discrimination.

18. Attorney Donovan makes an intentionally false statement when she says that the accusation against the Judge is for being "**sexually biased or prejudiced against men** …." (Donovan Declaration ¶ 10 (emphasis added)). The allegations in the motion to disqualify are of the Judge's "**appearance** of sexual bias, sexual prejudice, and partiality against the class of men, including the named plaintiff," (Den Hollander Law Memorandum p. 1 (emphasis added)) and that the October 3rd conference "create[d] the **appearance** that Judge Cedarbaum, whether true or not, is biased and prejudiced against men and creates a perception that she is not impartial in these proceedings," (Den Hollander Initial Affirmation ¶ 14 (emphasis added)).

19. Defense counsel Donovan claims that the disdainful disregard and animosity exhibited by the Judge towards me by consistently cutting off my answers, pointing out the unpopularity of the lawsuit, and at one point mockingly calling into questions my professional credentials demonstrated no "animus, antagonism or disdain" toward the class of men. (Donovan Declaration ¶ 8). Attorney Donovan conveniently forgets that I was standing there not just as a man but as the putative representative of thousands of men. And, let's be frank, does anyone expect a defense lawyer not to spin what occurs in court or elsewhere.

20. Attorney Donovan blissfully ignores that this is a suit to vindicate the rights of men, that all the plaintiffs are men, and that I am standing in their stead. When the Court exhibits palpable antagonism toward me, it is doing the same toward the thousands of guys who continue to be charged more than females at night clubs in violation of the 14th Amendment. When the antagonism within the courtroom as shown by the Judge's repeated interruptions, the professional insult, the remark about the unpopularity of the case, the arguing on behalf of a defendant's motion that was filed five days earlier, the moving up of the originally scheduled conference to just five days after the filing to that defendant's motion, and the delaying, perhaps forever, a decision on class certification in a civil rights case are all combined with the reality beyond the courthouse walls that (1) this suit would cost females lots of money by ending the male subsidization of ladies to party in nightclubs and (2) the past 40 years of institutions in America giving females preferential treatment at the expense of the rights of men, it adds up to at least an appearance of sexual bias, sexual prejudice and partiality toward the male plaintiffs.

21. Defendant Sol also filed an answering declaration but it wasn't filed until 5:52 PM on the Wednesday before the return date of Thursday, November 1, 2007. According to Judge Cedarbaum's rule, <u>3. Motions C.</u>, the declaration should have been filed by 12 noon. Since the declaration was not timely filed, I have not addressed it in this affirmation.

Dated: New York, NY                                         /S/
       October 28, 2007                        _____
                                                                                       Roy Den Hollander (RDH 1957)
                                                                                        545 East 14 Street, 10D
                                                                                         New York, NY 10009
                                                                                         (917) 687 0652