UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
Roy Den Hollander,

       Plaintiff on behalf of himself        Docket No. 07 CV 5873 (MGC)
       and all others similarly situated,        ECF

   -against-

Copacabana Nightclub,
China Club,
A.E.R. Nightclub,
Lotus,
Sol, and
Jane Doe Promoters,

       Defendants.
-----------------------------------------------------------x

**REPLY MEMORANDUM OF LAW TO DEFENDANT LOTUS'S OPPOSITION TO DISQUALIFICATION OF JUDGE CEDARBAUM**

Dated: October 28, 2007

Roy Den Hollander (RDH 1957)
545 East 14 Street, 10D
New York, NY 10009
(917) 687 0652

## **PRELIMINARY STATEMENT**[1]

Defense counsel for Lotus, Deborah Swindells Donovan, makes a number of self-serving misrepresentations in her Preliminary Statement at pp. 1 & 2 of her law memorandum:

- The motion to disqualify is not for the Judge being "biased against men" (Donovan Memorandum p. 2), but for "the appearance of sexual bias, sexual prejudice, and partiality against the putative class of men on whose behalf this class action was filed and the male named plaintiff." (Den Hollander Notice of Motion).

- State action is not a jurisdictional issue. It is rather a "matter of **substantive** constitutional law…." Lugar v. Edmondson Oil Co., 457 U.S. 922, 936, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482, 495 (1982)(emphasis added).

- There is no case law in the Second Circuit on all fours with this case that finds no state action. There are, however, two decisions from this Court that do find in a virtually identical situation state action as a result of the nexus of connections between the New York State Division of Alcoholic and Beverage Control ("ABC") and a facility selling alcohol for consumption on the premises. Seidenberg v. McSorleys' Old Ale House, Inc., 317 F. Supp. 593 (1970)(Mansfield, J. granted plaintiffs' motion for summary judgment); Seidenberg v. McSorleys' Old Ale House, Inc., 308 F. Supp. 1253 (1969)(Tenney, J. denied defendant's motion for a Rule 12(b)(6) dismissal).

- A.E.R. Lounge's ("AER") motion to dismiss on the substantive issue of state action was not argued by AER, it was argued by the Judge, which is an indication of partiality.

- This action started out as a putative class action, and the AER motion to dismiss was set for argument on October 25th. As a result of the Judge's decisions at the October 3rd

---

[1] The sections in this reply memorandum of law are organized to correspond to the sections in Lotus' opposition law memorandum for easy reference by the Court.

conference, the case is now *pro se* and apparently no oral argument will be had. (*See* Den Hollander Reply Affirmation ¶¶ 13 –15.) If a judge finds a party's conduct in court objectionable, her options are sanctions or contempt—not crippling a civil rights case through procedural rules as attorney Donovan clearly believes is proper.

- Had I acted as attorney Donovan claims, then the Judge would have surely sanctioned me, held me in contempt or issued a stern warning to cease—she did not.

- The Judge's knowledge of legal authority did not contradict my legal position because the knowledge, apparently based mainly on the AER law memorandum, was incomplete in failing to cite the McSorleys' decisions, and in accurate in failing to recognize a key distinction between this case and the one cited by the Judge: Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1965). Moose Lodge was a private club that served alcohol. The defendants in this case are public accommodations.

Contrary to attorney Donovan's views, an attorney has every right and indeed a duty, especially in a civil rights case, to do all he can to find a judge that does not appear biased, prejudiced or partial against the Constitutional rights of the attorney's clients.

## ARGUMENT

Attorney Donovan remains true to American feminist zealotry in her opening paragraphs of argument by using denigrating descriptions to characterize a class of men's nerve to fight for their rights. Self-righteous feminists always criticize a guy for fighting for his rights in the hope that he will do what most guys do—lay down and let them drive right over his civil liberties, perhaps in a Mercedes Benz. Once again to correct attorney Donovan's spinning, the motion does not allege bias on the part of the Judge but the appearance of such. (Den Hollander Initial Affirmation ¶ 14).

**I.  Lack of Adequate Notice**

Attorney Donovan continues her *ad hominem* attacks from her declaration in Part I of her argument, along with her wrong-headedness about state action being a mere jurisdictional issue that a federal court has to decide before exercising its power over a case.  Personal and subject matter jurisdiction have given the Court authority to decide the rights and duties of the parties.  If the Judge thought that she didn't have jurisdiction over this case, she would not have set a schedule for dispositive motions; she would have thrown the case out.  Attorney Donovan also mistakenly claims the Complaint in this action is against "private nightclubs."  The defendants are not "private clubs" as used in Moose Lodge No. 107 v. Irvis, 407 U.S. at 175, but public accommodations.  (Complaint ¶ 4).

Attorney Donovan, however, is correct that judges at the initial conference are free to explore the merits of a case and probably often do.  But how often do they take a motion to dismiss by one party that had weeks to research authorities and prepare its arguments and use that preparation against a plaintiff-attorney who had inadequate notice in a civil rights class action—probably next to never.  Attorney Donovan cites to Nichols v. Alley, 71 F.3d 347 (10th Cir. 1995), for "expressly" (Donovan Memorandum p. 4) holding that the Judge's arguing on behalf of defendant AER does not call for recusal.  That is not what Nichols holds.  The Second Circuit stated "cases within 455(a) are extremely fact driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."  Nichols at 351 (quoting U.S. v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995)). Among factors that do not call for recusal are "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; … mere familiarity with the defendant(s), or the type of charge, or kind of defense presented."  Nichols at 351.  But those

4

factors are not a factual description of what took place at the October 3rd conference. (Den Hollander Initial Affirmation ¶¶ 5 – 14 and Reply Affirmation ¶¶ 10, 11). While citing Nichols, Attorney Donovan is actually ignoring the case's holding by failing to take into account the facts and circumstances of the October 3rd conference.

One telltale sign that the Judge was advocating AER's position on the state action question was that during the antagonistic grilling over that issue she failed, as did AER's motion, to cite the two McSorleys' decisions from the same court in which she sits that had found state action in a virtually identical situation. The only difference in the McSorleys' case was that females, not male, were being discriminated against by a bar regulated by the ABC. Under the law, that difference on the issue of state action is irrelevant, however, attorney Donovan appears to find it crucial in claiming state action does not exist in this case.

Attorney Donovan also misunderstands the issue of adequate notice. It's not whether a party gets to argue, has enough time to argue, but whether the party was given adequate notice. Adequate notice includes alerting a party as to the issues that he will have to argue. One result of my not receiving adequate notice was that during the conference the Judge insulted me in a mocking fashion by calling into question whether I was a lawyer at all; apparently for not being fully prepared to argue against a motion to dismiss that was filed five days earlier, and wasn't suppose to be argued until three weeks later. So at that conference, I was being grilled and insulted over a motion to dismiss, and even had the Court warned me that I would be arguing against AER's motion, I would have had only one day's notice. That's not adequate notice under the Constitution's due process clause.

I will have the opportunity to submit a written opposition to defendants' motions to dismiss, but the crucial procedural decisions have already been made against the putative class

plaintiffs at a conference that lacked adequate notice. Failure to provide adequate notice and the other conduct described by the plaintiff-attorney in his initial affirmation create to the rational mind, to the reasonable person, an appearance of bias and partiality against the putative class of men.

## II. Appearance of Sexual Bias, Sexual Prejudice, and Partiality

The October 3rd conference lasted around 40 minutes and spanned a number issues but none, as misrepresented by attorney Donovan, dealt with jurisdiction—neither personal nor subject matter. (Donovan Memorandum p. 6).

Contrary to attorney Donovan, the Judge did not request that I send her the two McSorleys' decisions that contradicted the Court and defendant AER's position on state action. (Donovan Memorandum p. 6). When I first raised the McSorleys' decisions, I volunteered the citations, but the Judge declined to take them. After I told the basic facts in McSorleys', the Judge then requested the cite to only the decision that granted summary judgment for the two female plaintiffs when the Court found state action by a bar that sexually discriminated against females. I verbally gave her the citation. The Judge did not request I send her the two McSorleys' decisions. Rather, I requested permission to supplement some answers for which I did not have the information at my finger tips because of the lack of adequate notice.

Attorney Donovan claims that I repeatedly interrupted the Judge and raised my voice to her. (Donovan Memorandum p. 6). If that were true, Judge Cedarbaum, a reputed no-nonsense judge, would surely have sanctioned me or at least threaten me with contempt. Neither of those happened.

Attorney Donovan argues that even had the events at the conference occurred as I said in my initial affirmation, there is no basis for recusal. That's not what the U.S. Supreme Court says

in the key decision on recusal. In <u>Liteky v. United States</u>, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), the Court construed the statutory basis for recusal: 28 U.S.C. § 455, which attorney Donovan doesn't even refer to in her opposition. She does, however, dismiss <u>Liteky</u> as "inapposite" because its specific fact situation isn't identical to this case, while at the same time and in the same paragraph of her memorandum, she relies on <u>Liteky</u> to conclude the events of the October 3rd conference "cannot constitute valid grounds for recusal…."[2] (Donovan Memorandum p. 6). She even relies on "inapposite" <u>Liteky</u> in another section of her law memorandum at p. 7.[3] So is <u>Liteky</u> "inapposite" or not? According to attorney Donovan, it depends on whether it serves her argument or not.

### III.  Recusal Is Based on All the Facts.

Attorney Donovan argues there are no grounds for recusal based solely on the Judge not granting my request to decide the class certification issue first and my request to be appointed interim counsel. Attorney Donovan is right, but that's not what I'm arguing. In determining whether to disqualify, the courts look to see whether a reasonable person given all the facts and circumstances would question whether the judge was impartial. *See* <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 861, 108 S. Ct. 2194, 2203, 100 L. Ed. 2d 855, 873 (1988)(citing with approval the 5th Circuit decision appealed from). The motion argues that when all the facts and circumstances are taken together and reasonable inferences made, there exists the appearance of partiality.

Attorney Donovan claims the motion alleges the Judge "somehow demean[ed] the lawsuit." (Donovan Memorandum p. 7). Those are attorney Donovan's words—not mine. None of my papers use the word "demean" other than this paragraph. She pulls the same tactic

---

[2] Attorney Donovan got her cite wrong on <u>Liteky</u>, it's 510 U.S. at 556.
[3] Once again the correct cite to <u>Liteky</u> is 510 U.S. at 550.

with the word "conspiracy", which she uses in her opposition papers. Once again, that's her word—not mine. (Donovan Declaration ¶ 4, Donovan Memorandum p. 7). Of course, it's always easier for an attorney to make an argument if an opponent says what the attorney wants, but to start putting words in my mouth just isn't fair. My motion is for recusal—not conspiracy. Conspiracy requires an agreement between two parties. There are no allegations that the Judge and any of the defendants entered into an agreement to thwart this case. The allegations are for the appearance at the October 3rd conference of sexual bias, sexual prejudice and partiality against the putative class of men.

Attorney Donovan also misrepresents federal court practice and the law by claiming that the issue of state action is a jurisdictional issue that must be decided first before appointing class counsel or certifying a class. (Donovan Memorandum pp. 7, 8). In Henry v. Gross, 803 F.2d 757 (2d. Cir. 1986), the lower court, Southern District of New York, had delayed in making a decision on class certification that resulted in confusion over the nature of the case and made the Second Circuit's decision on appeal more difficult. Id. at 169. The Second Circuit urged "the district courts in cases such as this to heed the direction of Rule 23(c)(1) and make the class certification "as soon as practicable after the **commencement** of [the] action'". Id. at 769 (emphasis added by the Court). Attorney Donovan's position also contradicts the practice in cases in which a class was certified and class counsel appointed before any decision on state action. *E.g.* Blum v. Yaretsky, 457 U.S. 991, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982).

Defense counsel Donovan wrongly claims that "[a]s a matter of law" this case is a *pro se* action not a class action. (Donovan Memorandum p. 7). She gives no cites for that proposition, so here's a couple that hold just the opposite: *See e.g.* Kahan v. Rosentiel, 424 F.2d 161 (3rd Cir. 1970); Gaddis v. Wyman, 304 F. Supp. 713 (S.D.N.Y. 1969). The Third Circuit stated, "The

determination whether there is a proper class does not depend on the existence of a cause of action," and "a suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination the class is not proper." Kahan at 169 (citing to Gaddis at 715). No such determination was made at the October 3rd conference.

### IV.  Appearance of Sexual Bias, Sexual Prejudice and Partiality

Defense counsel Donovan continues her self-righteous spinning by claiming the motion for recusal alleges "the Judge is sexually biased or prejudiced against men." (Donovan Memorandum p. 8). Once again, the motion alleges "the **appearance** of sexual bias, sexual prejudice, and partiality against the putative class of men on whose behalf this class action was filed and the male named plaintiff." (Den Hollander Notice of Motion (emphasis added)). Even my initial affirmation states that the events at the October 3rd conference "creates the **appearance** that Judge Cedarbaum, whether true or not, is biased and prejudiced against men and creates a perception that she is not impartial in these proceedings." (Den Hollander Initial Affirmation ¶ 14 (emphasis added)).

In another of attorney Donovan's many misrepresentations, she claims the conference focused "solely on the jurisdictional question [state action], not the substance of whether 'Ladies Nights' discriminate against men." (Donovan Memorandum p. 8). That's false and probably intentionally so. The Judge raised the invidious discrimination issue a couple of times as to what acts specifically constituted discrimination by the defendants against the putative class of men. At first, the Judge referred to the discrimination issue as females being able to buy drinks for less than guys, but I responded that it was the defendants charging guys more for admission than females. The Judge revisited the discrimination issue later on during the conference by asking exactly how much more guys were charged compared to females.

9

Attorney Donovan's contention is pure delusion that the issue of discrimination against men was not discussed at the conference, did not lead to the Judge's remark about the unpopular nature of the case, did not lead to the Judge's mocking insult of my professional credentials, was not an issue over which I was repeatedly interrupted when trying to answer the Judge's questions, or was not a topic during which palpable animus was demonstrated.

The use of the illegally obtained essays in attorney Donovan's Exhibit A in order to win a denial of the recusal motion raises issues of (1) her attempting to use the government—as in state action—to punish the exercise of free speech by a man, (2) her apparent involvement in cyber crime by obtaining the essays over the internet from a computer not accessible to the public, and (3) her, perhaps, violation of copyright law by publishing the essays without permission. These matters, however, will be addressed later in this proceeding and elsewhere, but for the purpose of this motion, they are as irrelevant as attorney Donovan's client, Lulu's LLC or Lotus, repeated failure to pay its New York State taxes. Three times in two years, the State of New York was required to expend taxpayers' money to issue tax warrants in order to collect taxes owed by Donovan's client: July 20, 2004 for $48, 613, July 21, 2004 for $46,590, and November 3, 2006 for $81, 817.[4] (Den Hollander Reply Affirmation, Exhibit B).

Attorney Donovan uses the illegally obtained essays as though she were working for Ministry of Love in Orwell's 1984 and prosecuting me for a "thought-crime", a "speech-crime" for criticizing feminists' zealots and their dogma. She is attempting to win the day in court because I do not subscribe to the ideology of self-righteous feminists like her, but choose to think as I will, believe as I reason, and say as I understand. To her and her zealot cohorts, this is

---

[4] According to State records, the first two tax warrants have been satisfied.

sacrilegious of their political correctionalist beliefs that they hold as true over all others.  To the Founding Fathers—it's liberty.

## CONCLUSION

The plaintiff-attorney on behalf of the putative class of thousands of everyday guys being discriminated against by the defendant nightclubs, requests the Court grant the motion for recusal for not the least of reasons that "[i]t is the daily; it is the small; it is the cumulative injuries of little people that we are here to protect …." –Judge Learned Hand.

Dated: New York, NY  
October 28, 2007

/S/  
_____  
Roy Den Hollander (RDH 1957)  
545 East 14 Street, 10D  
New York, NY 10009  
(917) 687 0652