UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Roy Den Hollander,

       Plaintiff on behalf of himself
       and all others similarly situated,        Civil Action No. 07 CV 5873 (MGC)

  -against-

Copacabana Nightclub,
China Club,
Guest House,
A.E.R. Nightclub,
Lotus,
Sol, and
Jane Doe Promoters,

       Defendants .
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT..................................................................................1

ARGUMENT.............................................................................................................3

I. DEFENDANT LOTUS' MOTION TO DISMISS THE COMPLAINT SHOULD BE GRANTED BECAUSE PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION.....3

II. LOTUS IS A PRIVATELY OWNED AND OPERATED NIGHTCLUB WHICH DOES NOT OPERATE UNDER COLOR OF STATE LAW, ELIMINATING ANY POSSIBLE BASIS FOR SUIT IN FEDERAL COURT UNDER SECTION 1983........................5

III. ACCORDING TO THE UNITED STATES SUPREME COURT, EXTENSIVE REGULATION ALONE DOES NOT CONVERT A PRIVATE PARTY, LIKE LOTUS INTO A STATE ACTOR...........................................................................................7

IV. COURT IN THE SECOND CIRCUIT LIKEWISE REFUSED TO FIND STATE ACTION MERELY BECAUSE A PRIVATE ENTITY SUBJECT TO DETAILED REGULATION................................................................................................9

V. CASES DECIDED SINCE MCORELY'S, INVOLVING LIQUOR LICENSES, HAVE NOT FOUND STATE ACTION PERMITTING A LAWSUIT UNDER SECTION.......12
1983

CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

**CASE**                                                                                                   **PAGE**

Blum v. Yaretsky,
457 U.S. 991, 1004-05 (1982).............................................................................................5,6,

Comiskey v. JFTJ Corp.,
989 F.2d 1007, 1011 (8th Cir. 1993)......................................................................................12

Craig v. Boren,
429 U.S. 190, 208 (1976).......................................................................................................13

DM Research, Inc. v. College of Amer. Pathologists,
170 F.3d 53, 55 (1st Cir. 1999)..................................................................................................3

Doug Grant, Inc. v. Greate Bay Casino Corp.,
232 F.3d 173 (3d Cir. 2000).......................................................................................................3

Glendora v. Cablevision Sys. Corp.,
893 F. Supp.264 (S.D.N.Y. 1995)............................................................................................11

Grandon v. Merrill Lynch & Co.,
147 F.3d 184, 188 (2d Cir. 1998)...............................................................................................3

H.J. Inc. v. Northwestern Bell Tel. Co.,
492 U.S. 229, 249-50 (1989).....................................................................................................2

Hadges v. Yonkers Racing Corp.,
733 F.Supp.686, 691 (S.D.N.Y.), aff'd, 918 F.2d 1079 (2d Cir. 1990),
cert. denied, 499 U.S. 960 (1991)...........................................................................................4,9

Jackson v. Metropolitan Edison Co.,
419 U.S. 345, 351 (1974).......................................................................................................6,9

Leeds v. Meltz,
85 F.3d 51, 54 (2d Cir. 1996).................................................................................................5,9

Lyles v. Executive Club LTD,
670 F.Supp.34-35 (D.D.C. 1987)..............................................................................................8

Millenson v. New Hotel Monteleone, Inc.,................................................................................12
475 F.2d 736 (5th Cir. 1973)

Moose Lodge No. 107 v. Irvis,
407 U.S. 163, 173 (1972)..........................................................................................................7

<u>Seidenberg v. McSorleys' Old Ale House, Inc.</u>,
  317 F.Supp. 593 (S.D.N.Y. 1970)..................................................................11

## PRELIMINARY STATEMENT

Plaintiff comes before this Court seeking to bring the practice of holding Ladies Nights in nightclubs to an end. He alleges that these events discriminate against men. But Plaintiff's case suffers from a fatal flaw. He only can challenge this practice in federal court if he satisfies the "state actor" requirement of Title 42, United States Code, Section 1983. The defendant nightclubs, including Lotus, unquestionably are private entities that cannot be deemed state actors without at least a modicum of evidence to demonstrate the State of New York and Lotus are operating jointly in some fashion.

But Plaintiff offers no such purported evidence in his bare-bones Complaint. On the contrary, Plaintiff relies solely and exclusively on the conclusory allegation that Defendants' "operations are entwined with the New York State Division of Alcoholic and Beverage Control...and the nightclubs, along with New York State and the City benefit from invidiously discriminating against the [putative] class of men."

The Complaint is bereft of facts that might arguably demonstrate the existence of state action in connection with the nightclubs' independent decisions to host Ladies Nights. There are no allegations that the State of New York somehow was involved in instituting and enforcing Ladies Nights at Lotus or any other nightclub; coerced any of the nightclubs to hold Ladies Nights; or designed its liquor statutes and regulations to encourage discrimination in the form of Ladies Nights. Lotus receives no public funding from the State, nor does it exercise powers traditionally performed by the State. The absence of even one such allegation (much less evidence to support even one such allegation) irremediably and irrevocably defeats Plaintiff's bid to sue Lotus and the other nightclubs under Section 1983. Defendants' motions to dismiss the Complaint, therefore, should be granted.

### STATEMENT OF ALLEGED FACTS IN PLAINTIFF'S COMPLAINT

Plaintiff purports to bring a class action pursuant to 42 U.S.C. § 1983. Complaint ¶2. The gravamen of his complaint is that Lotus (and other nightclubs) have a "practice and policy...that charges men more for admission that females or makes a man's admission more timely or economically burdensome than for females." *Id.* ¶5. This practice and policy commonly is referred to as "Ladies Nights." Plaintiff claims Ladies Nights violate the equal protection clause of the Fourteenth Amendment of the United States Constitution. *Id.* ¶1.

The principle allegation in the Complaint appears in Paragraph 4:

> The defendants are nightclubs located in New York City, opened to the public, serve alcoholic and non-alcoholic beverages, their operations are entwined with the New York State Division of Alcoholic and Beverage Control and the New York City Consumer Affairs Department, and the nightclubs, along with New York State and the City, benefit from invidiously discriminating against the plaintiff class.

Plaintiff identifies the question of law, which can be decided upon this motion, as whether "the defendants [were] acting under color of state law when they discriminated against the class members?" *Id.* ¶9(b). Such state action is a prerequisite of bringing this case in federal court under Section 1983.

### ARGUMENT

### POINT I

### DEFENDANT LOTUS' MOTION TO DISMISS THE COMPLAINT SHOULD BE GRANTED BECAUSE PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION

A claim may be dismissed on motion of party where the claim fails to state a valid cause of action. Federal Rule of Civil Procedure 12(b)(6). Such a motion should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)(internal quotation marks and citation omitted). Although on a Motion To Dismiss, the well-pleaded

2

allegations in the Complaint are to be taken as true (*Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998), Plaintiff cannot evade dismissal of his Amended Complaint simply by pleading "conclusory allegations or legal conclusions masquerading as factual conclusions." *Agron v. Dunham & Assoc.*, No. 02 Civ. 11171 (LAP), 2004 WL 691682, * 2 (S.D.N.Y. March 31, 2004) (Exhibit 1).[1]

Rather, Plaintiff must provide concrete facts to establish each and every element of his claim in order to "justify dragging a defendant past the pleading threshold." *DM Research, Inc. v. College of Amer. Pathologists,* 170 F.3d 53, 55 (1st Cir. 1999)(citations omitted). Here, Plaintiff should not be permitted to drag Lotus into a costly litigation because Plaintiff's Complaint improperly is based upon Section 1983. *Id.*; Complaint ¶ 2.

Plaintiff fails to acknowledge in his Complaint that Lotus is a private nightclub. Plaintiff therefore unsuccessfully tries to create state action where none exists, by asserting, in an entirely conclusory fashion, that Section 1983 applies to his lawsuit, because of "the entwinement [of Lotus' operations] with ... the New York State Division of Alcoholic and Beverage Control ("ABC") and the New York City Consumer Affairs Department." *Id.* ¶ 4.

This latter regulation by Consumer Affairs cannot establish a cognizable cause of action. On the contrary, it is absurd on its face as virtually all private businesses in the City are subject to oversight by Consumer Affairs. This certainly is insufficient to make out state action, which precludes federal jurisdiction under Section 1983.

Indeed, Lotus has been able to find only one case that even mentions Plaintiff's Consumer Affairs theory: *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000). That court, in the context of the regulation of a private casino, declined to hold that New Jersey's Consumer Fraud Act could create state action for purposes of Section 1983.

---

[1]  A copy of this unreported decision is attached as an exhibit to the Declaration of Deborah Swindells Donovan, dated November 7, 2007 and submitted in support of this Motion To Dismiss.

Accordingly, Lotus will not address this hypothetical "state action" in its initial brief requesting dismissal of Plaintiff's Complaint.

Instead, Lotus will concentrate on the failure of liquor licensing and regulation of Lotus by the ABC to establish state action, thereby warranting dismissal, despite Plaintiff's claims to the contrary. Plaintiff focuses solely on the fact that Lotus is open to the public, serves alcohol, and therefore, is "entwine[d] with the New York State Division of Alcoholic and Beverage Control." Complaint ¶ 4. Numerous cases, however, including some decided in the Supreme Court and the United States Court of Appeals for the Second Circuit, hold to the contrary. Such liquor regulation is insufficient as a matter of law to confer Section 1983 jurisdiction on federal courts, as explained below. Consequently, Plaintiff's Complaint cannot survive this Motion to Dismiss because there are no other factual allegations that conceivably could bestow Section 1983 jurisdiction on this Court. Without that, this Court cannot entertain Plaintiff's Complaint, warranting immediate dismissal.

## POINT II

### LOTUS IS A PRIVATELY OWNED AND OPERATED NIGHTCLUB WHICH DOES NOT OPERATE UNDER COLOR OF STATE LAW, ELIMINATING ANY POSSIBLE BASIS FOR SUIT IN FEDERAL COURT UNDER SECTION 1983

The statute upon which Plaintiff seeks to rely, Title 42, United States Code, §1983,[2] requires state action or it does not apply. *Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir. 1996). Lotus' conduct must have taken place "under the color of state law" or Plaintiff's lawsuit cannot avoid dismissal. *Id.* at 53; *see also Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1081 (1990).

The Supreme Court consistently has ruled that the Fourteenth Amendment prohibits discriminatory State conduct, but "erects no shield against merely private conduct, however

---

[2] Section 1983, in relevant part, provides: "Every person who, under color of any statute...[or] regulation of any State subjects or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in

4

discriminatory or wrongful." *Blum v. Yaretsky,* 457 U.S. 991, 1004-05 (1982). The analysis of Plaintiff's case, therefore, begins with whether there is state action involved in private nightclubs having Ladies Nights at their establishments. If not, Plaintiff's case must be summarily dismissed. Here, there is no state action and Plaintiff cannot maintain a valid cause of action under Section 1983.

While Plaintiff would have the Court believe otherwise, state action cannot be based solely upon the existence of extensive regulation by the State of a private business. *Id.* at 1004. Rather, state action can be found only where a private party is heavily regulated by the State and has some other close relationship with the private business. Only under those circumstances, as outlined below, can a private party's alleged engagement in behavior prohibited by the Fourteenth Amendment be challenged under Section 1983. This is not such a case.

First, the necessary state action exists where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the later may be fairly treated as that of the State itself. ...The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (citation and internal quotation marks omitted)(emphasis in original). Surely it cannot credibly be argued that the State, in the form of the ABC, is *responsible* for Ladies Nights held at Lotus.[3]

Second, while the circumstances vary, the Supreme Court's "precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice in law must be deemed to be that of the State." *Id.; see also Leeds v. Meltz,* 85 F.3d at

---

an action at law...."
[3] Promoters who perform services on behalf of Lotus determine whether Ladies Nights will be held there.

5

54. Critically, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum v. Yaretsky,* 475 U.S. at 1004-05. Yet Plaintiff has not pleaded, nor could he plead, any facts to demonstrate either that the ABC coerced Lotus, or significantly encouraged Lotus, to host Ladies Nights. At most, he accuses the State of acquiescing in Ladies Nights, which the Supreme Court explicitly has ruled insufficient on its face to confer Section 1983 jurisdiction.

Third, there may be sufficient state action to sustain a Section 1983 case where "the government so far insinuated itself into a position of interdependence with [the entity] that it was a joint participant in the enterprise." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974). Again, the Complaint is devoid of factual support for the proposition that the State of New York is a joint participant in operating Lotus and/or offering Ladies Nights.

Finally, state action may be found where a private business "has exercised powers that are traditionally the exclusive prerogative of the State." *Blum v. Yaretsky,* 475 U.S. at 1005. Lotus operates a nightclub. That hardly can be characterized as a function traditionally exercised by the State. Accordingly, Plaintiff has absolutely no basis upon which to manufacture state action that would allow him to invoke Section 1983 in this case, which warrants immediate dismissal of the Complaint in its entirety.

## POINT III

### ACCORDING TO THE UNITED STATES SUPREME COURT, EXTENSIVE REGULATION ALONE DOES NOT CONVERT A PRIVATE PARTY, LIKE LOTUS, INTO A STATE ACTOR

Plaintiff does not dispute that Lotus is a private business and is not directly a state actor of any kind. Rather, he unsuccessfully seeks to obtain federal jurisdiction by pointing to the significant regulation of Lotus, as a nightclub serving alcohol, by the ABC in an unavailing effort to fall within the limited provisions of Section 1983. This principal, applied in the context of liquor

licensing and regulation, first was rejected in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173 (1972). There, the Supreme Court first explained that it never had held that discrimination by a private party violated the Equal Protection Clause of the Fourteenth Amendment of the Constitution merely because that private party receives benefits from the State or is regulated by the State.

Instead, the Supreme Court had held, prior to *Moose Lodge,* that "where the impetus for the discrimination is private, the State must have significantly involved itself with invidious discrimination … in order for the discriminatory action to fall within the ambit of the constitutional prohibition." *Id.* Although the *Moose Lodge* case involved a private club with private members and not a privately held business open to the public, it nonetheless set forth the principle that Pennsylvania's liquor regulations were not "intended either overtly or covertly to encourage discrimination." *Id.* Nor did Pennsylvania law discriminate against individuals in protected categories with respect to their right to be "served liquor in places of public accommodation."[4]

Those principles apply with equal force to the State of New York. It cannot be said that New York liquor regulations encourage discrimination nor do those regulations discriminate against men who seek to obtain alcohol in "places of public accommodation," such as Lotus. Plaintiff, however, has argued that *Moose Lodge* is inapposite because it involved a private club, with private membership, as opposed to a place of public accommodation such as Lotus.

---

[4] Therefore, we have the answer to Plaintiff's question, asked in his October 10, 2007 letter to the Court, a copy of which is attached to the Donovan Declaration as Exhibit 2 :[d]oes Moose Lodge use the term "public accommodation?" October 10, 2007 letter at 2. The answer is yes.

7

But this theory has been soundly rejected by at least one federal court. In *Lyles v. Executive Club LTD,* 670 F.Supp.34-35 (D.D.C. 1987), three women sought admission to a nightclub, were denied admission and tried to bring a civil rights claims based on that denial. Plaintiffs there explicitly contended that the nightclub was a place of public accommodation that operated "pursuant to a liquor license issued by the District of Columbia." *Id.* at 36. Plaintiffs thus argued the nightclub was "subject to extensive state regulation and may be considered an arm of the state." *Id.* This is precisely the theory Plaintiff is presenting and it should be soundly rejected here as well.

The District Court declined to validate this "state arm" theory. Instead, it described the facts of *Moose Lodge* as "closely related" to those raised in the *Lyles* case. *Id.* The court pointed to two specific factors underlying the Supreme Court's ruling in *Moose Lodge*. First, the Pennsylvania Liquor Board had not been involved in establishing or enforcing the club's membership or guest policies, despite authorizing it to sell alcohol. Second, no evidence existed that Pennsylvania liquor law discriminated against minorities "in their right to purchase and be served liquor in places of public accommodation." The court accordingly concluded that, [h]owever detailed this type of regulation may be in some particulars, it cannot be said to in any foster or encourage racial discrimination." *Id.* at 37. The court held that, like Pennsylvania, D.C. law regarding alcohol "in no way fosters discrimination." *Id.* The same is true of New York liquor regulations.

The *Lyles* court declined to find the distinction between a private club, as in *Moose Lodge,* and a place of public accommodation, such as Lotus, meaningful. *Id.* The District Court held this distinction alone was not sufficient to render *Moose Lodge* inapplicable and convert

8

extensive regulation of the sale of alcohol into state action for purposes of Section 1983. *Id.* [5] Plaintiffs in *Lyles* offered no legal authority or other reason to distinguish between the two and the court concluded that a place of public accommodation should be treated in the same manner as the *Moose Lodge* private club. *Id.* Likewise, here, Plaintiff cannot point to legal authority that warrants refusal to apply the principles enunciated by the Supreme Court in *Moose Lodge* to a nightclub such as Lotus simply because it is heavily regulated by the ABC and is a place of public accommodation.

## POINT IV

### COURTS IN THE SECOND CIRCUIT LIKEWISE REFUSE TO FIND STATE ACTION MERELY BECAUSE A PRIVATE ENTITY IS SUBJECT TO DETAILED REGULATION

The Second Circuit likewise has enunciated the principle that "[e]xtensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor." *Leeds v. Meltz*, 85 F.3d at 54. To constitute state action, New York "must have exerted its coercive power over, or provided significant encouragement to, [Lotus]." *Id.* But Plaintiff here has not asserted a single fact that conceivably could be characterized as evidence that New York has coerced or significantly encouraged Lotus to host Ladies Nights. Therefore, there is no state action and Lotus cannot be sued under Section 1983 for alleged discrimination against men.

As discussed in the Motion To Dismiss filed by Defendant A.E.R. on or about September 28, 2007 ("AER Motion"), *Hadges v. Yonkers Racing Corp.*, is another extremely relevant case. The District Court there held that regulation and "mere licensing" by the State do not establish state action. This is true despite the "pervasive" regulation of the harness racing business at

---

[5] The Supreme Court consistently has ruled that other detailed regulation by the States does not give rise to state action either. *See, e.g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350-51 (1974)(public utilities); *Blum v. Yaretsky,* 457 U.S. at 1004 (nursing homes).

9

issue. *Hadges v. Yonkers Racing Corp.*, 733 F.Supp.686, 691 (S.D.N.Y.), *aff'd*, 918 F.2d 1079 (2d Cir. 1990), *cert. denied*, 499 U.S. 960 (1991).

The Second Circuit affirmed this decision. 918 F.2d at 1080. Specifically, the Second Circuit ruled that the mere existence of state regulation does not "transmute[] a private actor's conduct into state action." *Id.* at 1083. Like Lotus, Yonkers Racing Corp. ("YRC") is a privately owned business, purchased with private funds. *Id.* at 1080, 1082. The State did not have a proprietary interest in that business nor does it have one in Lotus' business. *Id.* at 1082. Like Plaintiff here, Plaintiff Hadges argued that YRC was subject to extensive statutory and regulatory supervision by New York State, thereby rendering YRC's conduct state action. *Id.* at 1081. Further, "it generated significant tax revenues for the State," as does Lotus. *Id.* The Second Circuit rejected Hadges's claim in spite of these two factors, both of which also are present here. This Court accordingly should reach the same result[6]

Other similarities between the two cases include the absence of direction by any State official in deciding whether YRC was to license Hadges or Lotus is to host Ladies Nights. *Id.* at 1083. Therefore, there was a distinct separation of the State, as regulator of harness racing and YRC's actions as a private corporation taken because they were believed to be in the best interests of that corporation. *Id.* The same clearly is true here. There is a definitive division between New York's regulation of establishments serving alcohol and Lotus' decision to host Ladies Nights as a promotion in the best interests of the corporation. Thus, there is no state action here, just as there was no state action in *Hadges*. This Court should follow Second Circuit precedent and dismiss this case due to the total absence of state action.

---

[6] Additional indicators of State involvement cited by Hadges, which do not exist in this case, include: "State law requires YRC to collect an admission tax...and regulates the price of admission." *Id.* at 1081-82. "[T]he Racing Board supervises all gambling activities...and the State Tax Commission oversees the financial aspects of gambling." *Id.* at 1082. "[T]he State has exclusive power to issue licenses to all track personnel...." *Id.* As a result, this case is a stronger one than *Hadges* for a conclusion that there is no state action.

In *Glendora v. Cablevision Sys. Corp.*, 893 F. Supp.264 (S.D.N.Y. 1995), the court similarly ruled that there was no state action despite substantial federal and state regulation over a cable television company. Moreover, the District Court declined to find state action even though the private company operated pursuant to a government franchise. *Id.* at 269. Lotus certainly does not operate pursuant to any government franchise, thereby making the case for state action in Lotus' case even less compelling. Accordingly, this Court should reject Plaintiff's claim that there is state action here, based exclusively on extensive liquor regulation, which is all Plaintiff has to rely upon vis-à-vis Lotus.

Every one of the foregoing cases, ruling that extensive licensing alone is insufficient to create state action, was decided by the Supreme Court, the Second Circuit or the Southern District of New York after *Seidenberg v. McSorleys' Old Ale House, Inc.*, 317 F.Supp. 593 (S.D.N.Y. 1970), was decided in 1970. Nonetheless, Plaintiff relies heavily on the *McSorley's* case to support his contention that there is state action in this case by virtue of the extensive regulations imposed on Lotus. *See* Exhibit 2 at 1.

In *McSorley's*, the court granted summary judgment to Plaintiffs, holding that McSorley's bar was required to admit females and could not continue its practice of excluding them and maintaining an all male bar. The court reached this decision based in large part on a finding that there was state action given the "kind and degree" of "pervasive" regulation the ABC exerted over the bar. *Id.* at 596-97, 599. Significantly, this decision was reached two years before the Supreme Court's *Moose Lodge* ruling. Subsequent cases require considerably more to find state action. That significant something more is glaringly absent here.

## POINT V

### CASES DECIDED SINCE MCSORLEY'S, INVOLVING LIQUOR LICENSES, HAVE NOT FOUND STATE ACTION PERMITTING A LAWSUIT UNDER SECTION 1983

A Fifth Circuit case involves a legal issue virtually identical to that presented in the

11

*McSorley's* case. In *Millenson v. New Hotel Monteleone, Inc.*, 475 F.2d 736 (5th Cir. 1973), the hotel had a grill/restaurant that permitted only men to enter. Plaintiff sought admittance for females as well. The Fifth Circuit explicitly addressed the very question before this Court---"whether the issuance of regulatory licenses to a place of public accommodation by a state will suffice to color the admission policies of the former with the authority and involvement of the latter." *Id.* at 737. The court ruled in the negative.

Based largely on the Supreme Court's 1972 ruling in *Moose Lodge*, the court concluded that the grill's admission policies had been determined by the hotel and not the state. *Id.* Review of the state licensing statutes applicable to the hotel and grill "manifestly" established that they were entirely separate from, and unrelated to, the admission policies of the hotel. *Id.* Therefore, Plaintiff could not demonstrate that the licenses issued to this public accommodation restaurant were so intertwined with the private hotel's admission policies as to give rise to state action. *Id.* Likewise, Plaintiff here cannot make any such showing of "entwinement" between New York's liquor licensing and regulatory provisions and Lotus' admission policy on Ladies Night. Plaintiff's Complaint, therefore, cannot withstand scrutiny and should be dismissed for lack of state action.

The Eighth Circuit also rejected a finding of state action where, as here, a bar held Ladies Nights and held a liquor license issued by the State. *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1011 (8th Cir. 1993). This case also was discussed in AER's Motion.

The facts are nearly the same in *Comiskey* as those involved in the instant case. A male challenged a Ladies Night promotion as violating his civil rights on the basis of his gender. *Id.* at 1008. Female customers received free drinks while males were required to buy their drinks at full price. The bar also occasionally held performances by male dancers, during which male attendance was prohibited. *Id.* at 1008. The plaintiff alleged that Section 1983 applied because the bar was a state actor as the recipient of a liquor license issued to the bar by the State and

12

the State's resulting regulation of the bar's actions. *Id.* at 1010. The Eighth Circuit, however, also rejected this premise.

Again, the court relied on *Moose Lodge* in reaching its decision. The court explicitly referred to the Supreme Court's conclusion that issuance of a liquor license and related "enforcement of the regulatory scheme" was insufficient to confer Section 1983 jurisdiction. *Id.* at 1010-11. As the Eighth Circuit observed, the Supreme Court's decision was based on the absence of public funding; the lack of evidence that these liquor regulations were designed in any manner to encourage discrimination; and the fact that the State had played no role whatsoever "in establishing or enforcing the discriminatory policies of the Moose Lodge." *Id.*

The Eighth Circuit likewise found that the Missouri bar at issue did not receive any public funding; the liquor licenses and accompanying regulations could not be viewed as encouraging discrimination; and the State of Missouri had not been involved in any manner in establishing the Ladies Night policies being challenged. *Id.* at 1011. Thus, the bar's conduct could not be "fairly attributable to the State." *Id.* (citation omitted). The court further stated that, as of its 1992 decision, all six courts addressing the issue of whether liquor licensing was sufficient to constitute state action had rejected the theory. *Id.* (citations omitted).[7]

Further, the Eighth Circuit rejected the existence of a "symbiotic relationship" between the bar and the State. It opined that no reasonable person could conclude that "the State of Missouri had elected to place its power, property and prestige behind the [alleged] discrimination. *Id.* (internal quotation marks and citations omitted). In sum, no valid Section 1983 claim arose on the mere basis that liquor licensing and regulation over the bar existed. *Id.*

---

[7] It should be noted that Plaintiff, in his October 10, 2007 submission to this Court ("Plaintiff's Submission"), relied on just one case decided after *Moose Lodge*, namely *Craig v. Boren*, 429 U.S. 190, 208 (1976). *See* Plaintiff's Submission at 1, a copy of which is attached to the Donovan Declaration as Exhibit 2. To the extent it is relevant, that case stands only for the proposition that *Moose Lodge* "establishes that state liquor regulatory schemes cannot work invidious discriminations that violate the Equal Protection Clause." Lotus does not dispute that partial description of the holding in *Moose Lodge*.

The same is true when the relevant factors are applied to liquor licensing and regulation here in New York. As a result, Plaintiff's contention, controverted by virtually every federal court to consider the question since *Moose Lodge*, cannot be sustained. His Complaint thus is eviscerated and should be summarily dismissed.

## CONCLUSION

For all of the foregoing reasons, as well as those stated in the AER Motion, Defendant Lotus respectfully requests that the Court grant its Motion To Dismiss Plaintiff's Complaint in its entirety.

Dated:   New York, New York
         November 7, 2007

                                          Respectfully submitted,

                                          GORDON & REES, L.L.P.

                                          By: *[signature]*
                                          Deborah Swindells Donovan, Esq. (DD 3121)
                                          Attorneys for Defendant
                                          90 Broad Street, 23rd Floor
                                          New York, New York 10004
                                          (212) 269-5500