UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
Roy Den Hollander,

       Plaintiff on behalf of himself
       and all others similarly situated,       Civil Action No. 07 CV 5873 (MGC)

   -against-

Copacabana Nightclub,
China Club,
Guest House,
A.E.R. Nightclub,
Lotus,
Sol, and
Jane Doe Promoters,

       Defendants.
-----------------------------------------------------------x

### DECLARATION OF DEBORAH SWINDELLS DONOVAN
### IN SUPPORT OF DEFENDANT LOTUS' MOTION TO DISMISS THE COMPLAINT FOR
### FAILURE TO STATE A CAUSE OF ACTION

    Deborah Swindells Donovan, an attorney duly admitted to practice in the State of New York, hereby affirms the following under the penalty of perjury:

    1.    I am a partner with the law firm of Gordon & Rees, L.L.P., counsel for Defendant Lotus, one of the nightclubs named in the within action. As counsel for Lotus, I am fully familiar with the facts set forth herein. This Declaration is submitted in support of Lotus' Motion To Dismiss the Complaint for failure to state a cause of action.

    2.    Annexed hereto as Exhibit "1" is a true and complete copy of *Agron v. Dunham & Assoc.*, No. 02 Civ. 11171 (LAP), 2004 WL 691682, * 2 (S.D.N.Y. March 31, 2004).

    3.    Annexed hereto as Exhibit 2 is a true and complete copy of a letter from Plaintiff Roy Den Hollander to Judge Miriam Cedarbaum, dated October 10, 2007.

Dated:   New York, New York
         November 7, 2007

_____
Deborah Swindells Donovan (DD 3121)

**EXHIBIT "1"**

Westlaw.

Not Reported in F.Supp.2d                                                                                                        Page 1
Not Reported in F.Supp.2d, 2004 WL 691682 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**Agron v. Douglas W. Dunham, Esq. & Associates
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Batyah Levi AGRON Plaintiff,
v.
DOUGLAS W. DUNHAM, ESQ. & ASSOCIATES,
Defendant.
No. 02 Civ.10071(LAP).

March 31, 2004.

Memorandum Opinion and Order
PRESKA, J.
*1 This case arises out of Douglas W. Dunham, Esq.'s ("Mr. Dunham" or "Defendant") *pro bono* representation of Plaintiff Batyah Levi Agron ("Ms. Agron" or "Plaintiff") in her action against the Trustees of Columbia University. Ms. Agron filed her action against Columbia in 1988 *pro se* in the Southern District of New York (the "Original Action"). She asserted discrimination claims under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, based upon Columbia's rejection of her application for readmission to its School of General Studies. Mr. Dunham became her *pro bono* attorney in 1992. The Original Action came to trial in August 1999 before the Honorable Thomas P. Griesa, lasting approximately one week. The jury found that Ms. Agron was a handicapped person within the meaning of the Rehabilitation Act, but that she was not "otherwise qualified" for readmission to Columbia. (Declaration of Douglas W. Dunham ("Dunham Decl."), sworn to July 3, 2003, Ex. 3 at 1.) Shortly after Judge Griesa, in September 1999, denied the motion for JNOV that Mr. Dunham filed on behalf of Ms. Agron (Dunham Decl. Ex. 3), Mr. Dunham withdrew from his representation of her because he determination that there was no meritorious ground for appeal. Ms. Agron pursued an appeal *prose* before the Second Circuit, which denied her motion for appointment of counsel and found that her appeal lacked merit and therefore dismissed it. *SeeAgron v. Trustees of Columbia University,* No. 99-9407 (2d Cir. Sept. 1, 2000). Ms. Agron subsequently filed a petition for certiorari to the United States Supreme Court, which was also denied. *SeeAgron v. Trustees of Columbia University,* 534 U.S. 932 (2001).

Ms. Agron then brought this suit *pro se* against Mr. Dunham in August 2002. Her first complaint (which was never served on Mr. Dunham) was dismissed *sua sponte* by the Honorable Michael Mukasey on the grounds that she had not properly alleged an amount in controversy in excess of $75,000 and that she had not properly pled a claim for legal malpractice. *SeeAgron v. Dunham,* No. 02 Civ. 10071, Order at 2-4 (S.D.N.Y. Dec. 19, 2002). Plaintiff has now filed an Amended Complaint against Mr. Dunham, dated February 19, 2003. The Amended Complaint ("Complaint") appears to assert claims for violation of civil rights, legal malpractice and civil conspiracy.

By notice of motion dated July 3, 2003, Defendant moved to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Legal Standards*

I. Proceeding *Pro Se*

In addressing the Defendant's motion, the Court is mindful that the Plaintiff is proceeding *pro se* and that her submissions should be judged by a more lenient standard than that accorded to " 'formal pleadings drafted by lawyers.' " *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)); *see alsoBurgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) ("We read [the pro se party's] supporting papers liberally, and will interpret them to raise the strongest arguments they suggest."); *Hanlin v. Mitchelson,* 794 F.2d 834, 838-39 (2d Cir.1986) (citing *Haines,* 404 U.S. 519, to support the principle that pro se pleadings are given a liberal construction). Nevertheless, proceeding *pro se* does not altogether relieve Ms. Agron from the usual pleadings requirements. *SeeKadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 U.S. Dist. LEXIS 17390, at *16 (S.D.N.Y. Dec. 5, 1994) ("The work product of pro se litigants should be generously and liberally construed, but [the pro se's] failure to allege either specific facts or particular laws that have been violated renders his attempt to oppose defendants' motion ineffective.").

II. Rule 12(b)(6) Standard

*2 In deciding a motion to dismiss, I must view the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 691682 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). I must accept as true the well-pleaded factual allegations stated in the Complaint, *Zinermon v. Burch,* 494 U.S. 113, 118 (1990), and draw all reasonable inferences in favor of the Plaintiff. *Scheuer,* 416 U.S. at 236;*Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *accordCohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). In order to avoid dismissal, plaintiff must do more than plead mere " 'conclusory allegations or legal conclusions masquerading as factual conclusions." ' *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice P12.34[1][b] (3d ed.1997)). In construing the Complaint, documents attached to or referenced in the complaint may be considered on a motion to dismiss without converting the motion to dismiss into one for summary judgment. See*Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002) (court may look to "facts as presented within the four corners of the complaint, to documents attachments to the complaint, or to document incorporated within the complaint by reference"); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (same). Additionally, matters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records may also be considered on a motion to dismiss. *See,e.g.,Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000) (taking judicial notice of pleading in another lawsuit); *Clarry v. United States,* 891 F.Supp. 105, 109 (E.D.N.Y.1995) (on motion to dismiss, court "permitted to take judicial notice of matters of public record"), *aff'd,*85 F.3d 1041 (2d Cir.1996).

III. Discussion

Although Plaintiff's Complaint is not entirely clear, Plaintiff appears to assert three causes of action-civil rights violations, legal malpractice, and civil conspiracy. Defendant moves to dismiss all three claims for failure to state a legally cognizable claim against him.

A. Civil Rights

Plaintiff makes numerous references regarding alleged violations of her civil rights. Plaintiff alleges that Defendant "interfere[d] with her Civil Rights" (Compl. at 2), "den[ied] her equal rights" (Compl. at 3), and violated "her equal protection under the Constitution" (Compl. at 4). Plaintiff also purports to involve 42 U.S.C. § 1983 (Compl. at 1).

The Court of Appeals has held that "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights [have been violated] must first establish that the challenged conduct constitutes 'state action." ' *Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (citations omitted). Similarly, the Court of Appeals has stated that "[a] plaintiff pressing a claim of violation of his constitution rights under § 1983 is ... required to show state action." *Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.), *cert. denied,* 2003 U.S. LEXIS 4837 (U.S. June 23, 2003).

**\*3** It is well-established that as a matter of law a private attorney is not a state actor. *See,e.g.,Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (private attorney does not act under color of state law by virtue of his appointment by the court to represent a defendant in a state criminal proceeding); *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975) (private attorney not a state actor); *Cunningham v. Fisch,* 01 Civ. 1123, 2001 U.S. Dist. LEXIS 17483, at \*11 (S.D.N.Y. Oct. 26, 2001) (" '[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983" ') (quoting *Polk County v. Davidson,* 454 U.S. 312 (1981)). The Complaint alleges that Mr. Dunham was assigned to Ms. Agron as "a Pro Bono attorney," and thus, was a private attorney and not a state actor. (Compl. at 7.) Plaintiff appears to contend that Mr. Dunham is not a private attorney because he is employed by a law firm. (Pl's Opp. at 4.) This is a misunderstanding of the law, as noted above. Accordingly, Plaintiff's claims relating to violations of her civil rights and to § 1983 do not, as a matter of law, state a cognizable claim against Mr. Dunham and must be dismissed.

B. Legal Malpractice

A legal malpractice claim in the State of New York requires the Plaintiff to demonstrate three elements: the negligence of the attorney, that the negligence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

was the proximate cause of the damages sustained, and proof of actual damages. See _Mendoza v. Schlossman_, 87 A.D.2d 606, 606-07 (2d Dep't 1982). "[A] plaintiff must not only prove lack of reasonable care; plaintiff must also establish that he would have been successful in the underlying action, if his attorney had exercised due care." _Parksville Mobile Modular, Inc. v. Fabricant_, 73 A.D.2d 595, 599 (2d Dep't 1979). In other words, Plaintiff must establish that "but for" Defendant's negligence, Plaintiff would have won her case. See _Strook & Strook & Lavan v. Beltramini_, 157 A.2d 590, 591, (1st Dep't 1990) (to state a viable legal malpractice claim, plaintiff must show how she "would have prevailed in the underlying action buy for her attorney's malpractice"); _Parker, Chapin, Flattau & Klimpl v. Daelen Corp._, 59 A.D.2d 375, 378-79 (1st Dep't 1977) ("The party must show that but for the negligence, the particular result sought by the client would or could have been achieved.").

Plaintiff makes a variety of allegations with respect to this claim. Insofar as I am able to interpret them, none establishes the essential elements of a claim for malpractice because none allege that Ms. Agron would have ultimately prevailed with regard to her claim "but for" Mr. Dunham's alleged negligence.

First, Plaintiff complains about the amended complaint drafted and filed by Mr. Dunham in Plaintiff's Original Action. (Comp. at 2-3.) The Complaint lists a variety of matters that Ms. Agron believes Mr. Dunham "was negligent" in failing to include in the amended complaint filed in the Original Action. These matters included that Mr. Dunham omitted Ms. Agron's Supplemental Security Income Division Report that listed Ms. Agron "with Blindness," that Ms. Agron "was reported as a crime victim, on campus of Columbia University," and that Ms. Agron "displayed advanced courses work" at another accredited educational institution. However, a complaint must only set forth "a short and plain statement of the claim," in accordance with Federal Rule of Civil Procedure 8(a)(2). Under Rule 8(a)(2), it was not necessary for Mr. Dunham to include in the amended complaint in the Original Action the allegations listed by Ms. Agron. See _Swierkiewicz v. Sorema N.A._, 534 U.S. 506, 512 (2002) (under Rule 8(a)(2), "a complaint must include only 'a short and plain statement of the claim' "). Moreover, as a matter of law, the fact that the amended complaint filed in the Original Action did not list the specific matters cited by Ms. Agron had no effect on the outcome of the trial in her case in the Original Action in August 1999, which was held after document productions, depositions and pretrial motions.

*4 Second, Plaintiff complains of statements made by Mr. Dunham in a memorandum of law in opposition to Defendant Columbia University's motion for summary judgment on the grounds of the statute of limitations. (Compl. at 3.) However, Plaintiff fails to allege any connection between these statements and how she would have prevailed with regard to her contract claim if Mr. Dunham had argued the statute of limitations issues for that claim differently or that Plaintiff would have ultimately prevailed at trial on her contract claim if Mr. Dunham had won a ruling that the claim was not time-barred. The fact that the trial court did not find merit in Mr. Dunham's arguments that Plaintiff's contract claim was not time-barred does not provide a basis for a malpractice claim.

Third, Plaintiff alleges that Mr. Dunham inappropriately provided in discovery a medical report, dated June 1994, to Columbia's lawyer, without her consent. That report (Dunham Decl. Ex. 14) was an expert report by a psychiatrist regarding Plaintiff's mental and emotional disabilities and was provided to Columbia as such, with Ms. Agron's knowledge and consent. See Dunham Decl. Ex. 15 (Interrogatory answers describing Dr. Deutsch's report and accompanying certification bearing Ms. Agron's notarized signature). Regardless, as a document attached by Plaintiff to her Complaint in this case indicates, "neither Dr. Deutsch nor his expert report were presented to the jury at the trial." (Dunham Decl. Ex. 16.) Therefore, plaintiff has failed to demonstrate any connection between the purported inappropriate disclosure and her failure to prevail at trial in the Original Action. Plaintiff's contentions with respect to Dr. Deutsch's opinion and report also fail because he never testified at trial, and his report was not used by Columbia at trial. Therefore, the report cannot be said to have influenced the trial in any way.

Fourth, the Plaintiff complains that Mr. Dunham reduced the amount of damages claimed from $40 million to in excess of $100,000. (Compl. at 3.) The amended complaint in the Original Action alleged that plaintiff "ha[d] been damaged in an amount to be determined but presently believed to be in excess of $100,000" and that Plaintiff sought a judgment against Columbia "in an amount presently believed to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be in excess of $100,000 to be determined by the proof at trial."(Dunham Decl. Ex. 2 at 6.) On its face, such language, which is commonly used in complaints in this Circuit, in no way limits the amount of damages that a plaintiff may obtain at trial. In any case, it is not alleged that the amount of damages asserted in Plaintiff's amended complaint had any effect on the outcome of the trial of Plaintiff's claims against Columbia.

Fifth, Plaintiff complains about various documents that she alleges were not presented at trial. (Compl.¶ 3-4.) However, Plaintiff does not allege that the presentation of these documents would have somehow altered the outcome of the underlying trial, nor does Plaintiff give any indication what she believes that these letters would have established had they been presented to the jury during the trial of her case against Columbia.

*5 Sixth, Plaintiff alleges that Mr. Dunham "did nothing to defend [her] with zeal."(Compl. at 4.) However, Plaintiff does nothing more than make this allegation in a conclusory fashion. Furthermore, after the jury rendered its verdict in the Original Action, Judge Griesa thanked the lawyers and made the following statements on the record: "And I would like to address the plaintiff's lawyers. You did all you could with this case, all that could possibly be done."(Dunham Decl. Ex. 4 at 33.) [FN1] Furthermore, in Plaintiff's own submission to the Second Circuit, Plaintiff stated of Mr. Dunham that he "did the best he could, under the most trying circumstances, from the Defendant, etc."(Dunham Decl. Ex. 6 at 6.) Thus, not only do Plaintiff's own record admissions contradict her contention but Plaintiff utterly fails to allege with any particularity how Mr. Dunham failed to represent her with zeal.

> FN1. My review of the record in this action leads me to concur in Judge Griesa's evaluation of Mr. Dunham's representation. As this action unfortunately demonstrates, however, no good deed goes unpunished.

Seventh, Plaintiff claims that Mr. Dunham failed to oppose Columbia's introduction of a "time-barred Columbia Past Prejudice Record dated January 9, 1978."(Compl. at 4.) However, the introduction of other materials similar to the one of which Plaintiff complains were admitted by the trial court over Mr. Dunham's objections. See Dunham Decl. Ex. 25. Plaintiff demonstrates no basis on which Mr. Dunham might have prevailed to prevent Columbia's introduction of the evidence, nor does Plaintiff allege a sufficient causal relationship between the introduction of that evidence and the outcome of the trial.

Eighth, Ms. Agron complains that Mr. Dunham's associate took away her Hebrew Prayer book and "hid" it. As the Complaint explains, however, Columbia's lawyer had requested (and obtained) a ruling from the trial court that Ms. Agron's prayer book not be kept open in front of her at counsel table, within sight of the jury. In any case, it bears no relationship to any outcome in the Original Action. The same applies to Ms. Agron's claims that the trial was not limited to 4 hours a day, Plaintiff did not receive hearing devices, and that she was not given notes or a transcript of the proceedings. These bear no relationship to the outcome of the Original Action or the appeal thereof.

Ninth, Ms. Agron asserts that Mr. Dunham mishandled the way in which her discrimination claim should have been tried. Ms. Agron appears to contend that Mr. Dunham should have tried her discrimination claims against Columbia's claims of discrimination based upon her physical disabilities rather than based upon mental or emotional disabilities. (See Pl's Opp. at 11-13, 18.) However, even taken as true, these allegations fail to establish that Plaintiff could have prevailed on claims of discrimination because the jury found that Ms. Agron was not "otherwise qualified" to be a student at Columbia and therefore the jury never reached the question of whether Ms. Agron had been discriminated against. Therefore, the jury never even reached the question of whether Ms. Agron had been discriminated against.

*6 Tenth, Ms. Agron complains that her academic record at Bar Ilan University and Hunter College demonstrates that she was qualified. (Pl's Opp. at 17-18.) However, this is an argument that was presented to the jury in the Original Action and not a basis for a malpractice claim against her attorney. In any case, none of the purported evidence claimed by Plaintiff can be deemed in any way likely to have changed the jury's determination that Plaintiff was not otherwise qualified.

Finally, Ms. Agron contends that Mr. Dunham violated various disciplinary rules in the course of his representation of Ms. Agron. However, an alleged

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05873-MGC    Document 38    Filed 11/07/2007    Page 8 of 14

Not Reported in F.Supp.2d                                                                                             Page 5
Not Reported in F.Supp.2d, 2004 WL 691682 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

violation of a disciplinary rule "does not, without more, generate a cause of action." *Schwartz v. Olshan Grundman Frome & Rosezweig,* 302 A.D.2d 193, 199, 753 N.Y.S.2d 482, 487 (App.Div.2003). Here, none of the alleged violations is relevant to Plaintiff's claims of malpractice and Plaintiff's burden of pleading facts that she would have prevailed on her claims against Columbia were it not for Mr. Dunham's alleged negligence. Therefore, because none of the allegations supports the existence of a causal relationship between the alleged violations and the outcome of the trial of her claims, the allegations are insufficient to state a claim for malpractice as a matter of law.

C. Conspiracy

Under New York law, a civil conspiracy claim must be based upon a viable intentional tort claim. *See, e.g., Alexander & Alexander of N.Y., Inc. v. Fritzen,* 68 N.Y.2d 968, 969, 503 N.E.2d 102, 103, 510 N.Y.S.2d 546, 547 (1986). As discussed, *supra,* Plaintiff's allegations are insufficient as a matter of law to establish that Mr. Dunham committed any intentional tort against her. Thus, Plaintiff fails to state a claim for civil conspiracy because no underlying tort has been properly pled. Moreover, Plaintiff's conspiracy claim fails for the additional reason that her allegations of conspiracy are entirely conclusory and do not provide a "factual basis indicating the existence of a civil conspiracy." *See Grennwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 U.S. Dist. LEXIS 5144, at *16 (S.D.N.Y. Apr. 19, 1995). Accordingly, insofar as Plaintiff attempts to assert a claim for civil conspiracy, that claim is dismissed.

*Conclusion*

For the reasons stated above, Defendant's motion to dismiss is granted, and Plaintiff's Complaint is dismissed in its entirety with prejudice. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED

S.D.N.Y.,2004.
Agron v. Douglas W. Dunham, Esq. & Associates
Not Reported in F.Supp.2d, 2004 WL 691682 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT "2"**

## ROY DEN HOLLANDER
### Attorney at Law

545 East 14th Street, 10D  
New York, NY 10009

Tel. & Fax: (212) 995-5201  
Mobile 917 687 0652  
rdhhh@yahoo.com

October 10, 2007

Judge Cedarbaum  
United States Courthouse  
Southern District of New York  
500 Pearl Street, Room 1330  
New York, N.Y. 10007

**Hollander v. Copacabana Nightclub et al. *(Class Action)*  
S.D.N.Y. 07 Cv 5873 (MGC)**

Dear Judge Cedarbaum:

A number of questions raised at the October 3rd scheduling conference were not fully resolved, so I am providing such below.

1. What legal authority is there that a business regulated by the New York State Division of Alcoholic and Beverage Control is engaged in state action when it discriminates based on sex?

Seidenberg v. McSorleys' Old Ale House, Inc., 317 F. Supp. 593 (1970)(Mansfield, J. granted plaintiff's motion for summary judgment); Seidenberg v. McSorleys' Old Ale House, Inc., 308 F. Supp. 1253 (1969)(Tenney, J. denied defendant's motion for a Rule 12(b)(6) dismissal). In the McSorleys' cases, two females were refused service at McSorleys' Old Ale House. Both decisions found that state action existed.[1]

The U.S. Supreme Court referred with approval to the 1970 McSorleys' case by stating, "both federal and state courts uniformly have declared the unconstitutionality of gender lines that restrain the activities of customers of state-regulated liquor establishments...." Craig v. Boren, 429 U.S. 190, 208, 97 S. Ct. 451, 462, 50 L. Ed. 2d 397, 413 (1976). The Craig case ruled the 21st Amendment did not trump the 14th Amendment into allowing a state to set different age requirements for males and females for drinking alcoholic beverages. The Supreme Court's approval of McSorleys' is dicta, although persuasive dicta.

2. What legal authority is there that a state's licensing alone of a private business is state action? None, but licensing alone is <u>not</u> the test.

---

[1] This Court, of course, can always overrule the two McSorleys' decisions.

The Southern District Court held in the 1970 McSorley's case that the involvement of the state does not have to be exclusive or direct, United States v. Guest, 383 U.S. 745, 755, 86 S. Ct. 1170, 1177, 16 L.Ed.2d 239, 248 (1969), and the state does not have to expressly or specifically authorize, command or support the discriminatory conduct. McSorleys' at 596. "Where the state has become sufficiently involved, its inaction, acquiescence or continuation of its involvement under circumstances where it could withdraw, may be sufficient." Id. (citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S. Ct. 856, 861-62, 6 L.Ed.2d 45, 52 (1961)). The state action issue is determined in reference to the kind and degree of state involvement alleged. McSorleys' at 597 (1970). The question is whether "to some significant extent the State in any of its manifestations" has become involved in the discriminatory practice under attack. Id. (citing Burton, 365 U.S. at 722, 81 S. Ct. at 860, 16 L.Ed.2d at 50). In addition, where the state engages in conduct having the effect of encouraging, tolerating or acquiescing in the discrimination, the 14th Amendment may be invoked. Id. at 598 (citing Reitman v. Mulkey, 387 U.S. 369, 375, 87 S. Ct. 1627, 1631, 18 L.Ed.2d 830, 835 (1967).

While the statement that no state action has been found based solely on the licensing of a private entity is accurate, it does not apply to the situation in this case and does not describe the analysis that the courts undertake to determine whether state action exists.

As Mr. Justice Clark wrote in Burton:
"Because the virtue of the right to equal protection of the laws could lie only in the breadth of its application, its constitutional assurance was reserved in terms whose imprecision was necessary if the right were to be enjoyed in the variety of individual-state relationships which the Amendment was designed to embrace. For the same reason, to fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.' [citation omitted] Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton, 365 U.S. at 722, 81 S. Ct. at 860, 6 L.Ed.2d at 50.

1972 3. Is Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1965), distinguishable from this case because Moose Lodge involved a private club and not one of public accommodation? And, does Moose Lodge use the term "public accommodation"?

Moose Lodge had been issued a "private club license" by the State of Pennsylvania to serve alcohol. The Supreme Court distinguished Moose Lodge from Burton, relied on in McSorleys', by stating, "Unlike Burton, the Moose Lodge building is located on land owned by it, not by any public authority. Far from apparently holding itself out as a place of **public accommodation**, Moose Lodge quite ostentatiously proclaims the fact that it is not open to the public at large. Nor is it located and operated in such surroundings that although private in name, it discharges a function or performs a service that would otherwise in all likelihood be performed by the State. In short, while [in Burton there] was a public restaurant in a public building, Moose Lodge is a private social club in a private building." Moose Lodge, 407 U.S. at 175, 92 S. Ct. at 1972, 32 L. Ed. 2d at 638-39 (n. 2 states: The Pennsylvania courts have found that Local 107 is not a place of public accommodation)(emphasis added).

2

Justice Brennan dissented in Moose Lodge and would have found state action: "Liquor licensing laws are only incidentally revenue measures; they are primarily pervasive regulatory schemes under which the State dictates and continually supervises virtually every detail of the operation of the licensee's business. Very few, if any, other licensed businesses experience such complete state involvement." Moose Lodge, 407 U.S. at 184-85, 92 S. Ct. at 1977, 32 L. Ed. 2d at 644. Justice Brennan was joined by Justice Marshal. Justice Douglas in a separate dissent, also joined by Justice Marshal, said, "[T]he State of Pennsylvania is putting the weight of its liquor license, concededly a valued and important adjunct to a private club, behind racial discrimination." Id. 407 U.S. at 183, 92 S. Ct. at 1976, 32 L. Ed. 2d at 643.

6. What does Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001), have to do with this case?

In Brentwood, the U.S. Supreme Court used a state action test of "entwinement" between state government officials and an association of public and private secondary schools that regulated interscholastic athletic competition. Brentwood was raised at the October 3rd Conference not because of factual similarity with this case, but to point out the type of analysis that the U.S. Supreme Court used in its most recent case for finding state action. According to the Court, "public entwinement in the management and control of … corporations," 531 U.S. at 297, 121 S. Ct. at 931, 148 L. Ed. 2d at 818, "support a conclusion that an ostensibly private organization ought to be charged with a public character …," 531 U.S. at 302, 121 S. Ct. at 933, 148 L. Ed. 2d at 821. The line between private and state action is drawn, in part, to avoid the imposition of responsibility on a state for conduct it could not control. Id. 531 U.S. at 295, 121 S. Ct. at 930, 148 L. Ed. 2d at 816 (citations omitted). The New York State Division of Alcoholic and Beverage Control governs the conduct of the defendant nightclubs.

7. What are the specific discriminations based on sex that the defendants are engaged in?

As shown in Exhibit A to the Complaint:

**Lotus** 5/23/7  Ladies are free before midnight on the Velvet List and reduced after at $10. Guys are $10 all night with Velvet List.

**A.E.R.** 5/24/7  Ladies free until 12 midnight, Gents are $10 until 12 MN, after, ladies are $15, Gents $25

**Copacabana** 5/24/7  Ladies $5 before midnight, fellas $25 if under 21, $15 if over 21 before midnight.

**China Club** 6/1/7  Cover: Free for ladies before 1:30AM, Guys are Free before 11 PM, and $20 after on the Victory Guest List.

**Sol** 6/1/7  Velvet Guest List, Guys $20 all night, girls free before 1AM.

3

Since the beginning of 2007, I have acquired numerous advertisements by or on behalf of the defendant clubs that either charge males more for admission than females or more strictly limit the time that males can enter a club for free or at a reduced price. Another sampling follows:

**Lotus** 10/3/7  Ladies free before midnight and reduced after.  Gents reduced all night.

**A.E.R.** 5/3/7  Ladies free until 12 AM, gents reduced admission.

**Copacabana** 1/26/7  Ladies free all night, gentlemen reduced admission.

**China Club** 10/12/7  Ladies free until 12 midnight, guys free until 11PM.

**Sol** 9/29/7  Ladies free until 12 midnight, gents free until 11 PM.

Sincerely,

Roy Den Hollander (RDH 1957)

CC   Charles B. Linn, Esq.
     Attorney for defendant Copacabana
     901 North Broadway
     North White Plains, N.Y. 10603
     (914) 949-4200

     Danny Free, Principal
     China Club
     268 West 47th Street
     New York, N.Y. 10036
     (212) 398-3800

     Vanessa R. Elliott, Esq.
     Beattie Padovano, LLC
     Attorneys for defendant A.E.R.
     50 Chestnut Ridge Road
     Montvale, NJ 07645
     (201) 573-1810

     Deborah Swindells Donovan, Esq.
     Gordon & Rees, LLP
     Attorneys for defendant Lotus
     90 Broad Street, 23rd Floor

4

New York, N.Y. 10004
(212) 269-5500

Adam B. Kaufman, Esq.
Robert S. Grossman
Adam B. Kaufman & Associates, PLLC
Attorneys for defendant Sol
585 Stewart Avenue, Suite 302
Garden City, N.Y. 11530
(516) 228-8823

5