UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
Roy Den Hollander,

        Plaintiff on behalf of himself          Docket No. 07 CV 5873 (MGC)
        and all others similarly situated,          ECF

  -against-                             **FIRST AMENDED CLASS**
                                                    **ACTION 42 U.S.C. 1983**
                                                    **COMPLAINT**

Copacabana Nightclub,
China Club,
A.E.R. Lounge,
Lotus,
Sol[1], and
Jane Doe Promoters,

        Defendants.
-----------------------------------------------------------x

## Civil Rights, 14th Amendment - Equal Protection, Class Action.

1. This is an action brought by the plaintiffs as a class for declaratory and injunctive relief and nominal damages against the defendant discos[2] for the deprivation, under the color of state law, of the plaintiffs' rights as guaranteed by the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

2. The defendants regularly hold "Ladies Nights" in which they charge males 18 years-old and older more for admission than they charge females or give males less time than females to enter defendant discos for free or at a reduced price.

3. This class action is brought pursuant to 42 U.S.C. § 1983 over which this Court has jurisdiction in accordance with 28 U.S.C. § 1343(3) & (4).

---

[1] The defendants are listed by their trade names or "doing business as" names. Their legal business names are for the Copacabana Nightclub: River Watch Restaurant, Inc.; for China Club: Nightlife Enterprises L.P.; for A.E.R. Lounge: AER Lounge LLC: for Lotus: Lulu's LLC; and for Sol: Ruby Falls Partners LLC.

[2] The generic tern "disco" is used to refer to the defendants' establishments that sell alcohol for consumption on their premises. All, except for A.E.R. Lounge, have New York State Liquor Authority ("SLA") licenses classified as "on-premises" and A.E.R. has a "cabaret" license from the SLA. Both types of licenses are for public accommodations as opposed to "private clubs" for which the SLA issues a different type of license that exercises less pervasive control. Refer to N.Y. Alcoholic and Beverage Control ("ABC") Law § 3 and SLA Rules at 9 NYCRR Exec., §§ 47.3, 47.7.

4. This class action is maintainable under Fed. R. Civ. P. § 23(b)(2) because the defendants have acted on grounds generally applicable to the class, thereby making declaratory and injunctive relief and nominal damages appropriate to the class as a whole.

5. The defendants are discos located in New York City, the County of New York, open to the public, serve alcoholic and non-alcoholic beverages for consumption on their premises, provide music, and allow dancing. Some also provide food to their customers.

6. The defendant Jane Doe promoters act as agents for the discos.

7. A long history of regulation, control, price fixing, place of time and sale setting, and outright extinction lies behind the liquor business in this country since Colonial times, and the rights of those who choose to engage in it are <u>not</u> on a constitutional or legal parity with the rights of people who trade in bicycles, or cosmetics, or furniture.

8. The defendant discos are considered public accommodations under the New York State Alcoholic and Beverage Control ("ABC") Law, the State Liquor Authority ("SLA") Rules, and the State Civil Rights Law § 40.

9. The defendants are pervasively regulated and controlled as public accommodations effected with a public interest in fostering and promoting temperance in New York State.

10. Defendants' discos differ from "private clubs" serving alcohol in that private clubs do not purport to and are not required to serve the public.

11. New York State regulates private clubs, which it refers to as just "clubs," more loosely than premises such as the defendants that are open to the public.

12. The discretion of New York State to control the sale of alcoholic beverages by the defendants is an exercise of the ultimate sovereignty of the State.

13. New York State has absolute power to prohibit totally the sale of alcohol, broad power to control the times, places and circumstances under which alcohol is sold by the defendants; and even to arrogate to the State the entire business of distributing and selling alcohol to its citizens.

14. Permission to the defendants to sell alcohol is an exercise of New York State's police power allowing them to do what would otherwise be unlawful.

15. The defendant discos' ability to survive and to prosper economically depends on New York State's police power permitting the discos to retail alcoholic beverages for consumption on their premises.

16. New York State through the SLA controls the number of traffickers in alcohol and the locations for all licenses and permits in New York County, where the defendants are located.

17. The SLA regulates the trade and credit practices of all participants in the alcoholic beverage industry in New York State.

18. In 2006, New York State's revenue from on-premise licensing and renewals totaled $32 million, and $6.0 million from civil penalties. These funds are paid into the State Treasury. <u>New York State Liquor Attorney 2006 Annual Report</u>, http://abc.state.ny.us/forms/2006AnnualReport.pdf.

19. Defendant discos have benefited New York State by paying their fair share of license, renewal, and civil penalty fees as well as other fees into the State Treasury, part of which are generated by Ladies Nights.

20. Permission from the State allowing the defendants to retail alcohol cannot be transferred or assigned to any other person or premise unless allowed by the SLA.

21. The SLA requires defendants to be of high standing and character, experienced in operating a disco, mature, and financially responsible and can deprive them of the right to operate their businesses if it determines they have demonstrated undesirable propensities.

22. Police officials cannot hold a financial interest in anyone of the defendants.

23. Each principal or partner of the defendants must be a U.S. citizen or permanent resident alien, at least 21 years old, not a convicted felon nor guilty of certain misdemeanors unless she received a pardon or certificate of good conduct.

24. A change in shareholders, stock holdings, officers or directors by the defendants may require SLA approval.

25. The SLA must approve the financial business plan for any premise, the interior floor plan, the exterior blueprint, block plot diagram, the landlord, type of building, history of building's prior use, number of tables and chairs, manager, principals, principals' spouses, before granting permission to sell alcohol.

26. All of the defendants except for A.E.R. Lounge ("AER") must keep food available for customers.

27. New York State's ubiquitous control over the defendants prevents them from having any financial interest in any manufacturers or sellers of alcohol at wholesale.

28. New York State forbids the defendants from making any loans to or holding any liens on property of manufacturers or wholesalers or of any person involved in manufacturing and wholesaling.

29. Defendants, retailers of alcohol for on-premise consumption, cannot hold financial interests in or make loans to retailers of alcohol for off-premise consumption.

30. Defendants cannot receive any loans from alcohol manufacturers, wholesale sellers or retail sellers for off-premise consumption.

31. In contrast, a bicycle shop owner can borrow from or loan to whomever he wishes, can vertically integrate, and can sell his business to whomever he desires.

32. Defendants have no vested right in the SLA's approval permitting them to retail alcoholic beverages or in continuing approval to retail such. Denial of permission to sell alcohol for on-premise consumption is only reviewable at an arbitrary and capricious standard.

33. New York State's permission for the defendants to sell alcohol is a privilege of limited duration and can be canceled, suspended or revoked by the SLA at any time for cause.

34. Defendant discos do not even have a contractual right to continue selling alcohol.

35. The SLA may
    a. Impose a civil penalty on any of the defendants;
    b. Hold hearings, require the production of defendants' books, subpoena defendants, examine any person under oath; and
    c. Inspect the defendants' premises during hours of operation.

36. When the defendants renew their licenses, the SLA considers:
    a. Number of liquor licenses and types of licenses in proximity to the defendants locations and in New York County;
    b. Evidence that all necessary licenses from the State and City have been obtained;
    c. Effect license would have on traffic and parking in the area;
    d. Existing noise level in area;
    e. History of violations of the ABC law, SLA Rules, and reported criminal activity (<u>Exhibit A</u>, Lotus violations);
    f. Financial status of defendants and disclosure of the source of all funds;
    g. Whether the defendants intend of have waitresses called "bunnies," or some other evolutionarily correct name, dressed in scanty costumes who circulate among the customers to flirt and chat;
    h. Whether the principals are in contact with a person of "evil reputation," failed to disclose prior arrest records, or there's a pending indictment; and
    i. Any other factor the SLA considers relevant to the public convenience, advantage and in the interest of the community.

37. Defendants have no right to renew their licenses, which come up every two years.

38. The SLA imposes restrictive physical standards on defendants' premises:
    a. Limits the number of bars in defendants premises to one, but may allow two additional bars at a fee for each;
    b. Controls the display of signs within and outside the defendants' premises;
    c. Forbids any signs inside or outside advertising a particular brand of alcohol unless the SLA approves;

4

    d. Requires approval and fee payments before the defendants can physically alter or change their premises, such as
        i. Creating or relocating a window or door,
        ii. Reducing visibility within the premises,
        iii. Increasing or decreasing in size the premises or kitchen,
        iv. Changing the character of the interior,
        v. Changing the size or location of any bar;
    e. Even if an alteration of the premises is less than $10,000, or doesn't effect the physical structure or character, the defendants must still request permission, but in this situation, the SLA has just 20 days to object;
    f. Require adequate toilet facilities; and
    g. Prohibit any obstruction that prevents a full view of the entire room by every person present.

39. The defendants must also provide their local Community Planning Board with any application to alter their premises.

40. Defendants are required to display in a prominent location their state license to retail alcohol so that all visitors may see, and the license must be displayed in a particular type of frame of metal or wood.

41. The ABC Law and SLA Rules extensively regulate the defendants day-to-day operations:
    a. Prohibit sales to minors, intoxicated persons, and habitual drunkards;
    b. Prescribe hours for the sale of alcohol;
    c. Limit the age of persons employed by the defendants;
    d. Prohibit employment of convicted felons or those guilty of certain misdemeanors without a certificate of good conduct or pardon;
    e. Set terms and conditions for surety bonds required of defendants;
    f. Prescribe the form of all reports deemed necessary to be made to the SLA;
    g. Require defendants to maintain on their premises records of daily purchases, including name, license number and place of business of vendor, and records of individual sales;
    h. Purchase, sales, and personal records must be available for inspection by the SLA at any time during operating hours (in contrast a bicycle shop owner who has a Fourth Amendment right to privacy);
    i. Limit purchase of alcohol only from licensed manufacturers and wholesalers;
    j. Prohibit discrimination on account of race, creed, color or national origin;
    k. Demand compliance with state law, including Civil Rights Law 40-c that prohibits discrimination on the bases of sex by public accommodations;
    l. Forbid disorderly premises, lewd or indecent exposure (from 2004 to 2006, disturbances, misconduct or disorder has resulted in Lotus becoming a focal point for police attention, the SLA charged Lotus twice with allowing its premises to become disorderly as the result of an altercation, and once for permitting a robbery to occur within the premises, <u>Exhibit A</u>);
    m. Dictate the posting of signs that state it is against the law to sell alcohol to persons under 21 (the SLA twice charged Lotus with providing alcohol to a person under 21, <u>Exhibit A</u>);

    n. Compel signs of a specific size, point, and in specific locations stating that alcohol may harm incipient humans in a mother's womb;
    o. The SLA must be notified of any arrests on the premises, and the county District Attorney must inform SLA of any convictions resulting from those arrests;
    p. Obligate the defendants to insure that a high degree of supervision is exercised over the establishment at all times to prevent abuses of the privilege to sell alcohol;
    q. Defendants are strictly accountable for all violations committed, suffered, and permitted by any of defendants' employees;
    r. Conformity with all applicable building, fire, health, safety and governmental regulations (the SLA charged Lotus twice with operating an unlicensed cabaret, the NYC Department of Health cited Lotus three times for health code violations over which the SLA held a hearing, and the State Department of Taxation and Finance issued three tax warrants for Lotus' failure to pay taxes, Exhibit A);
    s. Require lighting good enough to permit a person to read nine-point print;
    t. Compel a valid bond in effect at all times;
    u. Prohibit refilling or tampering with the contents of any container of alcohol (the SLA charged Lotus with keeping alcohol in containers that were contaminated, and twice charged Lotus with keeping alcohol in containers the contents of which were not as represented on the labels, Exhibit A); and
    v. Must dispense alcohol from container in which it was received (the SLA once charged Lotus with failing to keep alcohol in its original container, Exhibit A).

42. Violations of most provisions of the ABC Law are a crime for which the police can make an arrest. The SLA works with local law enforcement agencies to assure compliance with the ABC Law.

43. The restrictions with which the retail sale of alcohol is hedged about, and in particular the restrictions imposed upon applications for new licenses, operate to limit competition to a degree sufficient to render the issuance of a license a commercially valuable privilege granted by the state to the licensee.

44. The economic interests of established licensees are protected by the denial of applications to new entrants, at least where existing licensees have made substantial investments and there has been no growth in community population or usage.

45. The State's comprehensive control over the alcohol industry operates to restrict competition between vendors of alcoholic beverages, such as the defendants, thus conferring on license holders a significant state-derived economic benefit approximating state support.

46. The State, not economics, controls the barriers of entry into the alcohol industry.

47. The SLA's broad authority to revoke or refuse a license for reasons deemed by it to serve the "public convenience and advantage," includes the prevention of unjustified discrimination in the exercise of the privilege granted the defendants, such as treating females and males differently for admission.

48. The SLA has continued bi-annually to renew defendants' privilege to retail alcohol for on-premise consumption despite the defendants open discrimination against males by charging them more for admission or making it more timely or economically burdensome for males to enter the discos than for females.

49. The SLA has not made any effort through the exercise of the broad authority granted it by the legislature to remedy the discrimination or to suspend or to revoke the licenses that the defendants must have in order to practice their discrimination.

50. Without the privilege to retail alcohol, the defendants would not be in a position to discriminate against men because without alcohol virtually no one, except members of temperance unions, would frequent defendant discos. The defendants would soon be out of business.

51. In order to increase revenues, the defendants operate the discriminatory Ladies Nights, which the SLA permits by failing to put an end to the defendants' disparate treatment of guys and females.

52. Part of the increased revenues from Ladies Nights inure to the benefit of New York State's Treasury by supporting the numerous fees charged the defendants by the SLA for various matters.

53. The defendant discos' promoters are either separate legal entities hired by the defendants, or employees of the same legal entity to which the SLA has granted permission to sell alcohol for on-premise consumption. In either case, the defendants hire and fire the promoters and have the ultimate authority to determine admission practices to their discos.

54. For example, Lotus has one employee who works out the deals with the promoters, such as who is going to pay how much on a particular night to enter, and hires the promoters. This individual man must approve not only the compensation for the promoters but the specific admission practices on a particular night. For all the defendants, it is the defendants who decide on the promoters, and it is the defendants who are the masters over their agent promoters.

55. Roy Den Hollander, counsel for the putative class and named-plaintiff or class representative, individually and on behalf of all the others similarly situated, both past and future, challenges the practice and policy of the defendants that charges guys more for admission than females or gives males less time than females to enter the defendant discos for free or at a reduced price—a form of invidious discrimination against men.

56. As <u>Exhibit B</u> shows, the defendants allow females in free up to a certain time but charge men for admission until that same time, or allow ladies in free or at a reduced price over a longer time span than men. The following are just some examples of the many advertisements by the defendants and their promoter agents illustrating that the defendants' admission practices on Ladies Nights treat females and males differently to

7

the detriment of males. A large number of the defendants' Ladies Nights advertisements were produced to the defendants as part of the plaintiff class' mandatory disclosure under Fed. R. Civ. P. 26(a):

  a. **Copacabana**, 560 West 34 Street, January 26, 2007, ladies free all night, gentlemen reduced admission.

  b. **China Club**, 268 West 47 Street, November 9, 2007, ladies free until 12 midnight, guys free until 11 PM.

  c. **A.E.R. Lounge**, 409 West 13 Street, May 3, 2007, ladies free until 12 AM, gents reduced admission.

  d. **Lotus**, 409 West 14 Street, November 8, 2007, ladies free before 1 AM, guys free before 12 midnight.

  e. **Sol**, 609 West 29 Street, September 29, 2007, ladies free until 12 midnight, gents free until 11 PM.

57. Any female 21 or older and neither drunk nor disorderly may enter the defendant discos for less money or has more time to enter the defendant discos for free or at a reduced price than any male 21 or older and neither drunk nor disorderly.

58. The putative class represented by the named-plaintiff in this action consists of all men who were admitted to the defendant discos since June 21, 2004 and were charged more than females or their admissions made more burdensome than for females through arbitrarily imposed time restraints.

59. The exact number of members of the class is not known, but it is estimated in the thousands; therefore, the class is so numerous that joinder of all members is impracticable.

60. There are questions of law and fact presented in this action that are common to the entire class and that affect the rights of the class:

  a. Were the members of the class invidiously discriminated against because of their sex by having to pay more money or navigate arbitrarily imposed time restraints in order to gain admission?
  b. Were the defendants acting under color of state law when they discriminated against the class members?

61. The claims of the named-plaintiff arise out of the same discriminatory practice and course of conduct by the defendants and are based on the same legal theories as for the entire class. The named-plaintiff has attended these discos and was charged more than females or had less time for entering a cabaret free of charge or at a reduced price than females:

8

    a. **Copacabana**, 560 West 34 Street, Thursday, May 24, 2007, ladies $5 before midnight; fellas $25 under 21, $15 over 21.  The named-plaintiff entered for $15 at 11:50 PM.

    b. **China Club**, 268 West 47 Street, Friday, June 1, 2007, ladies complimentary admission all night, gents complimentary until 11 PM.  The named-plaintiff entered at 11:20 PM, paid $20.

    c. **A.E.R. Lounge**, 409 West 13 Street, Thursday, May 24, 2007, ladies free until 12 midnight, gents reduced at $10, general admission $25.  The named-plaintiff entered for $10 at 10:55 PM.

    d. **Lotus**, 409 West 14 Street, Wednesday, May 23, 2007, ladies free before midnight and reduced after, guys reduced all night.  The named-plaintiff entered for $10 at 11 PM.

    e. **Sol**, 609 West 29 Street, Friday, June 1, 2007, ladies free before 1 AM, guys free before 11 PM with dates and $20 after 11 PM.  The named-plaintiff entered at 11:55PM, paid $20.

    f. **Lotus**, 409 West 14 Street, Sunday, October 7, 2007, ladies free, guys $20.  The named-plaintiff entered at 11:30 PM and paid $20.

Exhibit C reproduces the Ladies Nights' advertisements for the nights that the named-plaintiff attended as listed in paragraphs (a) to (e) above.

62. The named-plaintiff is an attorney admitted to practice in New York State, the U.S. District Courts for the Southern and the Eastern Districts of N.Y., and the Second Circuit, a former litigation associate at Cravath, Swaine & Moore, and is able to conduct this litigation fairly and adequately to protect the interests of the putative class.

63. WHEREFORE, the named-plaintiff requests that judgment be entered in this action on behalf of himself and all other class members similarly situated as follows:

64. A declaratory judgment that the defendants' Ladies Nights practice of charging men more for admission than females or giving males less time than females to enter defendant discos for free or at a reduced price violates the equal protection clause of the Fourteenth Amendment to the Constitution.

65. The defendants be enjoined from continuing their invidiously discriminatory practice against men.

66. Nominal damages to be decided by the Court.

67. And any other relief that is just and proper.

Dated:   New York, NY                                         /S/
         November 15, 2007
                                                     _____
                                                     Roy Den Hollander (RDH 1957)
                                                     Attorney for plaintiffs
                                                     545 East 14 Street, 10D
                                                     New York, NY 10009
                                                     (917) 687 0652