UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
Roy Den Hollander,

                Plaintiff on behalf of himself
                and all others similarly situated,          Civil Action No. 07 CV 5873 (MGC)

     -against-

Copacabana Nightclub,
China Club,
Guest House,
A.E.R. Nightclub,
Lotus,
Sol, and
Jane Doe Promoters,

               Defendants .
--------------------------------------------------------------x

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint fails to cure the deficiencies of his original Complaint, namely that the holding of Ladies Nights in nightclubs, including Lotus, constitutes state action. Quoting various regulations and history and making conclusory legal assertions do not alter the fundamental bar to his discrimination claim. Extensive regulation by the State is insufficient in and of itself to constitute the requisite state action. Rather, the State must participate in the particular action he is challenging, namely the prices charged men for admission and the times men are admitted to nightclubs on some nights, is less favorable than the treatment accorded women. Despite Plaintiff's long list of regulations promulgated under the New York State Alcoholic and Beverage Control Law ("ABC") by the State Liquor Authority ("SLA"), he has not identified, nor could he, a single fact to demonstrate that the State is involved in determining admission policies of nightclubs or the promotion of Ladies Nights.

Plaintiff continues to rest his Amended Complaint principally on the public nature of the nightclubs and the extensive regulation of the liquor sold there. No Defendant has contested these two assertions. The ABC does extensively regulate the sale of alcohol in public nightclubs. Therefore, merely specifying some of those extensive regulations does not add any factual basis to support the fatally defective premise that Lotus is a state actor as required by 42 United States Code, Section 1983, upon which Plaintiff relies for jurisdiction.

Glaringly absent from the Amended Complaint are any facts to demonstrate that Lotus receives State funding or performs a traditional State function. Nor can Plaintiff credibly argue that Lotus would appear, to a reasonable person, to be controlled by the State in any fashion, much less in determining its admission policies. Plaintiff's comparison of nightclubs to stores selling bicycles, cosmetics or furniture is both frivolous and unavailing. He remains unable to provide facts sufficient to establish state action and permit suit in federal court under Section

1983. Accordingly, his Amended Complaint cannot withstand scrutiny for the reasons set forth in Defendant Lotus' November 7, 2007 Motion To Dismiss and those supplemental reasons set forth below. The motions to dismiss filed by Lotus and other Defendants consequently should be granted in their entirety.

## ARGUMENT

### POINT I

### THE PUBLIC NATURE OF LOTUS DOES NOT TRANSFORM IT INTO A STATE ACTOR

The Amended Complaint ("Am. Cmplt.") emphasizes the public nature of Lotus and nightclubs in general in an unsuccessful attempt to circumvent the plain holding by the Supreme Court in *Moose Lodge* and remedy the lack of state action in this case. *See, e.g.,* Am. Cmplt. ¶¶ 5, 10, 11. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163 (1972). *Id.* at 1010-11. Plaintiff alleges: "Defendants' discos differ from 'private' clubs' serving alcohol in that private clubs do not purport to and are not required to serve the public." Am. Cmplt. ¶ 10.

*Moose Lodge* is applicable nonetheless because it does not rest solely on the distinction between private clubs open to the public and other private clubs. The Court specifically identified factors including the lack of State funding, the lack of evidence that the Pennsylvania state laws regulating the sale of alcohol were intended to sanction discrimination, and the absence of State participation in promulgating or implementing the discriminatory practices followed at the lodge. *Moose Lodge,* 407 U.S. 163, 173; *Comiskey v. JFTJ Corp.,* 989 F.2d 1007, 1010-11 (8th Cir. 1993).

Indeed, *Moose Lodge* explicitly relied upon the fact that Pennsylvania law was not designed to discriminate against individuals in protected categories with respect to their right to be "served liquor in places of public accommodation." *Id.* at 173. Despite Plaintiff's newly added lengthy description of New York regulations applicable to Lotus, he has not identified one

2

to demonstrate that the regulations are intended to discriminate against men and their "right to be served liquor in places of public accommodation." *Id.*

The other factors providing the foundation for the *Moose Lodge* ruling are not addressed in the Amended Complaint either. There still is no State funding of Lotus and New York State neither establishes nor enforces Lotus' admission policies. Thus, according to the Supreme Court, Lotus still is not a state actor. Plaintiff's Amended Complaint therefore fails to state a cause of action and Defendants' Motions To Dismiss should be granted.


## POINT II

### LOTUS DOES NOT PROVIDE A PUBLIC FUNCTION ORDINARILY PROVIDED BY THE STATE AND PLAINTIFF'S AMENDED COMPLAINT FAILS TO PRESENT FACTS TO THE CONTRARY, PREVENTING A FINDING OF STATE ACTION

Plaintiff's effort to argue Lotus "engages in a function traditionally associated with sovereign governments" (Opp. at 19) also is utterly futile. Nowhere in the Amended Complaint is there even a suggestion, much less an actual fact, to support such a theory of state action. Although Plaintiff includes a history of regulation of alcohol (Am. Cmplt. ¶ 7), that history omits any time when the State oversaw the admission practices of a business licensed to serve alcohol. Plaintiff continues to ignore that this case is about Lotus' admission policies.

Inexplicably, Plaintiff relies on *Evans v. Newton,* 382 U.S. 296 (1966), as authority for the position that a nightclub performs a public function (Opp. at 20), that case could not be less persuasive. One cannot compare the operation of a city park, which typically is a government function with determining admissions policies at a nightclub.

Likewise, Plaintiff's citation to *Marsh v. Alabama*, 326 U.S. 501 (1946), is puzzling. By Plaintiff's own admission, in that case, a private company was permitted "to provide the functions normally belonging to a municipality, the corporations' company-owned town exercised a public function...". Opp. at 19.    Plaintiff's Amended Complaint conspicuously omits identification of any functions normally exercised by a governmental entity.

On the contrary, in spite of the Amended Complaint's 67 paragraphs, most of which address liquor regulations, there is nary a reference to regulation by the SLA of nightclub admission policies.  Nightclubs can charge what they choose for admission and none of the extensive State regulation over alcohol eliminates this totally independent aspect of a nightclub's operations.

## POINT III

### PLAINTIFF PROVIDES NO FACTS REFLECTING STATE AUTHORIZATION OR ENCOURAGEMENT OF LADIES NIGHTS

#### A.    Plaintiff Expressly Concedes the State Exercises No Authority over Lotus' Admission Policies and the Amended Complaint Is Barren of Facts that Would Contradict this Fatal Admission

Plaintiff's Amended Complaint also lacks evidence of authorization or encouragement by the State of Ladies Nights.  Incredibly, Plaintiff simultaneously asserts that the State has authority over Ladies Nights in some unexplained fashion and makes the devastating admission that Lotus and the other Defendants, not the State, "have the ultimate authority to determine admission practices to their discos." *Id.* at 53.  This internal inconsistency reflects one of numerous holes in Plaintiff's argument.  This in and of itself should be sufficient to eliminate the state authorization or encouragement theory of state action.

**B.    Plaintiff Asserts No Facts To Demonstrate that the State Authorizes or Encourages Nightclub Admission Policies by Permitting the Nightclubs To Determine Those Policies**

But there are further compelling reasons to reject Plaintiff's position. He seems to posit that by renewing Lotus' liquor license rather than revoking it, the State somehow authorizes Lotus' admission practices. Am. Cmplt. ¶¶ 48-50. But this approach also is fruitless. Plaintiff blithely proceeds to present such a theory (Opp. at 23-24), simply ignoring the Supreme Court's express holding to the contrary: "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives...". *Blum v. Yaretsky,* 457 U.S. 991 at 1004-05 (1982).

This ruling renders the different finding in *Seidenberg v. McSorleys' Old Ale House, Inc.,* 317 F. Supp. 593, 597 (1970), completely irrelevant (which, by the way, does not present identical facts to those presently before this Court)(Opp. at 6). The Supreme Court ruled twelve years after *McSorleys',* precisely contradicting that lower court opinion that encouragement, toleration or acquiescence of a private entity's policy creates state action. Opp. at 22. Whether *McSorleys'* has been overruled according to Shephard's hardly is definitive when the United States Supreme Court explicitly has rejected its reasoning. *See* Opp. at 6.

**C.    There Are No Facts in Plaintiff's Amended Complaint that Support the Proposition that A Reasonable Person Would Associate Lotus' Admissions Policy with the State of New York**

*Burton v. Wilmington Parking Auth.,* 365 U.S. 715 (1961), does not compel a finding of state action here either. The decision in that case turned on the existence of an appearance of government approval, which is completely absent here. Opp. at 22. Plaintiff's Amended Complaint is totally devoid of any allegations similar to those involved in *Burton.* The Amended Complaint does not present facts, nor could it, to permit any reasonable person to conclude that the State participates in setting Lotus' admissions policies. Unlike the restaurant in *Burton,* Lotus does not give the "***appearance*** of government authorization" of its practices. Opp. at 15.

5

Indeed, as Plaintiff admits, the government had not directed the private restaurant in its parking building to discriminate, but "had placed the restaurant in a position in which citizens could reasonably view the restaurant's acts as authorized by an agency of the state. Opp. at 22.

Lotus, however, projects no such image. The Amended Complaint is devoid of allegations that Lotus is located in a government owned parking building, is leasing space from the government or is frequented by government workers. *Id.* Nor are there any similar factual contentions. Indeed, Plaintiff's Amended Complaint is devoid of allegations that any reasonable citizen would view Ladies Nights as sponsored by New York State. The long list of liquor regulations in the Amended Complaint does nothing to create such an appearance of government involvement for the average person. In any event, regulations are not facts.

In sum, Plaintiff's Amended Complaint does not provide any facts that might render *Burton* applicable to the nightclub admissions policies challenged here. Moreover, as is true of virtually all Plaintiff's authority, *Burton* is outdated and does not take into account subsequent Supreme Court rulings, such as *Blum v. Yaretsky.* Indeed, Plaintiff virtually ignores that very apposite case, stating only that there, "the State did not have control over the discharge of patients from a nursing [home][sic]." Opp. at 24-25. This sentence proves Defendants' point--- the State does not have control over the admission of customers to a nightclub either.

**D.    Display of a Liquor License Hardly Constitutes a Fact Sufficient To Convey State Participation in Determining Lotus' Admissions Policies**

In a desperate but ineffective endeavor to create an appearance of State authorization in the Amended Complaint, Plaintiff contends, "Defendants are required to display in a prominent location their state license to retail alcohol so that all visitors may see, and the license must be displayed in a particular type of frame of metal or wood." Am. Cmplt. ¶ 40. The Court can take judicial notice that such licenses hardly are poster-sized. Moreover, the very nature of nightclubs includes dim lighting. The requirement for such a license cannot credibly be said to

give reasonable people the impression that New York State has authorized Lotus' admission practices. Such a claim demonstrates the lack of substance to Plaintiff's frivolous case.

Furthermore, such licenses also are displayed in restaurants that serve alcohol. Indeed, restaurants are highly regulated. If Plaintiff's ill-conceived theory is applied to restaurants, then "early bird" specials for the elderly or promotions allowing children to eat free would be discriminatory on the basis of age. The "early bird" specials are analogous to Plaintiff's argument here because the reduced price of the food turns on the time older customers go to eat at a restaurant. Plaintiff contends he is prejudiced because some nightclubs "give males less time than females to enter defendant discos for free or at a reduced price." Am. Complaint ¶ 2. Arguably, this is "reverse" age discrimination, favoring those over 40 as compared to those under 40.

Similarly, children are permitted to eat at some restaurants for free, while those over 40 are not. Plaintiff bemoans free admission for women because men are not also admitted to the nightclubs for free and calls it sex discrimination. But presumably, he would not find permitting children the equivalent of free admission age discrimination against those over 40. These are commercial promotions implemented by restaurants in a legitimate effort to increase business, and hardly subject to attack. The same is true of admission to nightdubs.

## POINT IV

### LISTING LIQUOR REGULATIONS ARE NOT FACTS, AND IN ANY EVENT, ARE ESTABLISH STATE ENTANGLEMENT OR ENTWINEMENT

Plaintiff's Amended Complaint does nothing to further the erroneous proposition that Lotus is a state actor because it is subject to extensive regulation and licensing. Opp. at 11-15. Once again, Plaintiff is undaunted by subsequent Supreme Court case law that rejects this very proposition. Indeed, the Supreme Court expressly has ruled that state action cannot be based solely upon the existence of extensive regulation by the State of a private business. *Blum v.*

*Yaretsky,* 475 U.S. at 1004. Yet this is virtually all Plaintiff has added to his Amended Complaint. Am. Cmplt. ¶¶ 8-53. Rather, state action can be found only where the State is *responsible* for the specific conduct of which the plaintiff complains." 475 U.S. at 1004 (citation and internal quotation marks omitted)(emphasis in original).

The Second Circuit has reached the same conclusion. *Hadges v. Yonkers Racing Corp.,* 733 F.Supp.686, 691 (S.D.N.Y.), *aff'd,* 918 F.2d 1079 (2d Cir. 1990), *cert. denied,* 499 U.S. 960 (1991). Despite licensing and pervasive regulation of harness racing and the gambling that accompanies such racing, the court declined to find the private raceway was a state actor.

Plaintiff's Amended Complaint, however, lacks any facts whatsoever to support the legal conclusion that the State of New York is *responsible* for Lotus' admission policies, including Ladies Nights. On the contrary, Plaintiff's Amended Complaint admits Lotus determines its admission policies because it has "the ultimate authority to determine admission practices to their discos." Am. Cmplt. ¶ 53. But even if the State did determine Lotus' admission policies, which it does not, that would be insufficient. Indeed, in *Hadges,* the State both charged an admission tax and controlled the price of admission. 918 F.2d at 1081-82. Nonetheless, the Second Circuit refused to find state action.

The legal assertion added to the Amended Complaint that entities engaging in the sale of alcohol are not comparable to entities selling bicycles, cosmetics or furniture adds nothing to Plaintiff's position. Am. Cmplt. ¶ 7. In fact, it could hardly be more extraneous. Sales are not at issue here. Admissions policies are. References to the sale of bicycles, cosmetics or furniture is entirely unrelated to the admissions policies of stores offering such merchandise. It is difficult to discern what point Plaintiff seeks to convey in that paragraph of the Amended Complaint. It is nonsensical and like the remaining allegations in the Amended Complaint, has nothing whatsoever to do with the issue at hand. Namely, the admissions policies of nightclubs, not

8

liquor sales. Accordingly, Plaintiff's Amended Complaint is equally deficient as his original Complaint and should be dismissed for the same reasons.

## CONCLUSION

For all of the foregoing reasons, as well as those stated in Lotus' original Motion To Dismiss Plaintiff's Complaint and in the papers submitted by Lotus' co-defendants in connection with the Motion To Dismiss the original Complaint and the Supplements to that Motion To Dismiss, addressing the Amended Complaint, Defendant Lotus respectfully requests that the Court grant its Motion To Dismiss Plaintiff's Amended Complaint in its entirety.

Dated:     New York, New York
           December 14, 2007


Respectfully submitted,

GORDON & REES, L.L.P.

By: _____
Deborah Swindells Donovan, Esq. (DD 3121)
Attorneys for Defendant
90 Broad Street, 23rd Floor
New York, New York  10004
(212) 269-5500