UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Roy Den Hollander,

        Plaintiff on behalf of himself　　　　Docket No. 07 CV 5873 (MGC)
        and all others similarly situated,　　　ECF

        -against-　　　　　　　　　　　　　　**SUPPLEMENTAL DECLARATION
        　　　　　　　　　　　　　　　　　IN OPPOSITION TO MOTIONS TO**
Copacabana Nightclub,　　　　　　　　**DISMISS UNDER RULE 12(b)(6)**
China Club,
A.E.R. Lounge,
Lotus,
Sol, and
Jane Doe Promoters,

        Defendants.
------------------------------------------------------------x

## Christmas Clemency for Defense Attorneys

    I, Roy Den Hollander, an attorney admitted to practice in the State of New York and the U.S. Southern District Court of New York, declare under the penalty of perjury in accordance with 28 U.S.C. § 1746 the following:

1. The attorneys for the defendant on-premise retailers of alcohol received an early Christmas present for (1) using the wrong legal standard on their first set of motion to dismiss papers; (2) filing those motions late for Sol and Lotus;[1] and (3) refusing to file a reply to the plaintiff class's First Amended Complaint ("Amended Complaint").[2]

2. In the first set of motions to dismiss, the defense attorneys goofed by using a discarded legal standard in requesting that Judge Miriam G. Cedarbaum throw this civil rights case out of court. The U.S. Supreme Court had changed the law in May 2007 for deciding Rule 12(b)(6)

---

[1] The defense attorney for Sol also filed a decoy memorandum five days late in order to waste the limited time of the plaintiff class's attorney in reviewing it.
[2] The defense attorneys only replied to the original complaint and ignored the amended complaint. (Grossman Reply Memorandum p. 6 n. 2).

1

motions, but the defense attorneys missed it, even though the change would have benefited their clients.

3. At the beginning of this action, the defense attorneys had more than three months from the filing of the original complaint on June 21, 2007 up to the October 3, 2007 preliminary conference to research, compose and file their motions to dismiss. All they did, however, was request time extensions to which the plaintiff class's attorney, Roy Den Hollander, agreed out of courtesy.

4. During the October preliminary conference, Judge Cedarbaum even questioned the defense attorneys as to why they had not made their motions to dismiss before the conference. They pointed the finger of blame at the plaintiff class's attorney because he had agreed to their requests for time extensions.

5. Judge Cedarbaum gave the defense attorneys from October 3rd to November 7th to file their motions to dismiss—over four weeks.

6. The defense attorneys filed two motions[3]—both of which were late with a third memorandum of law—a decoy for wasting the plaintiff class's time—that was submitted five days later.

7. The two motions were received by the plaintiff class between 5 PM and 7 PM on November 7th instead of the required time of 12 noon. Five to seven hours may not sound like much, but those hours were primetime for researching at the New York County Lawyers Association library that closed at 8 PM. In addition, the plaintiff class's attorney, a sole practitioner, only had 13 days to answer the two motions, and by the defense attorneys filing them late, the attorneys effectively reduced that time to 12 days.

---

[3] The defendants submitted three motions in all. A.E.R. Lounge's ("AER") had already been filed five days before the preliminary conference.

2

8. Defense attorney Grossman (represents Sol) also filed another memorandum of law five days later. Attorney Grossman did not provide any explanation for the additional memorandum that appeared similar to his first but with differing pagination, so the plaintiff class's attorney had to use some of his limited time to review that memorandum.

9. After this "gamesmanship" of ratcheting up the time pressure on the plaintiff class's attorney by intentionally eating into his time to answer, the defense attorneys requested of the plaintiff class an extension of time for submitting their replies that would otherwise fall due right after the Thanksgiving holidays. The defense attorneys clearly wanted to take the long weekend holiday off, which their refusal to address the Amended Complaint in their replies confirms.

10. The plaintiff class's attorney declined the offer, which was his right. But in true Orwellian or feminist fashion, the defense attorneys chastised him for daring to exercise his right—something they had done before concerning his right to free speech. (Grossman Reply Declaration ¶ 4).

11. According to the inverted reasoning of the defense attorneys, the recipient of an offer must say "yes" because that's what the offeror planned. The plaintiff class's attorney will have to try that line next time he attends the defendant's Ladies Nights.

12. The plaintiff class filed an amended complaint as of right. The defense attorneys received the Amended Complaint as Exhibit 1 of the plaintiff class's Opposition via the ECF system after 11 PM on November 20th. The Amended Complaint was filed with the Court in person the following morning before 12 noon on November 21st, which was the deadline for the Opposition.

13. Defense attorneys Grossman and Donovan strain their reading credibility by falsely claming an ECF notice states the amended complaint was served and filed on November 26. (Grossman Reply Declaration ¶ 2, Donovan Reply Memorandum p. 2).

14. That ECF notice very plainly reads that the Amended Complaint was "filed" on "11/21/2007," but since amended complaints are filed in person with a follow up email notice that the plaintiff class also sent on November 21st, the Court did not get around to "entering" the transaction until November 26. Exhibit A, ECF notice, plaintiff class email to the Court, date stamped cover of the Amended Complaint.

15. The defense attorneys had from November 21 to November 27 to file their reply or replies under the Judges' rules. For three professional attorneys from defense firms, that was plenty of time, assuming they worked through the Thanksgiving weekend—but they chose not to.

16. Instead of knuckling down to do the inconvenient work that attorneys must do, instead of burning the midnight oil—they whined to the Judge for a "do-over" in much the same way as Mary Wollstonecraft pleaded for another chance—a second bite at the apple—from the American adventurer Gilber Imlay.[4]

17. Both defense attorneys Grossman and Donovan argued that because the Amended Complaint was "substantially longer [six pages], and more detailed than the complaint, and [was] accompanied by 4 multi page exhibits," everything done up until then was moot and should be done over. (Grossman Reply Declaration ¶ 2, *see* Donovan Reply Memorandum p. 2).

---

[4] Mary Wollstonecraft gained much of her fame and fortune from her work A Vindication of the Rights of Woman, which advocates that ladies can do anything guys can and advocates the strong, independent female should live free of any passionate bonds to a man. But when Mary tried to put her ideas to work, her delusions evaporated into two suicide attempts. Richard Polwhele wrote a poem about her failed integration of feminist tenets into reality that included the following lines: "A female band despising NATURE's law, As 'proud defiance' flashes from their arms, And vengeance smothers all their softer charms." The Unsex'd Females, ll.11-14 (1789).

4

18. The Amended Complaint asserts, among other allegations, how involved the State Liquor Authority is in the defendant on-premise retailers' businesses, which illustrates the existence of "state action" as required under 42 U.S.C. 1983 and the 14th Amendment.

19. The defense attorneys already knew everything in the Amended Complaint about their clients, or they should have.  There was no prejudice to them because the Amended Complaint concerns the same occurrences alleged in the original complaint.  Attorney Elliott (A.E.R. Lounge) agrees that "the nature of the claims presented … in the initial Complaint remain unchanged."  (Elliott Supplemental Affirmation ¶ 3).   Neither are there new parties, or new relief sought in the Amended Complaint.

20.   The only possible prejudice the defense attorneys could have suffered was not being able to take the entire Thanksgiving weekend off.  But these three seasoned defense attorneys most assuredly could have divided up the issues and arguments and still made it home for a leisurely turkey dinner with their families.

21. The plaintiff class did not maneuver the defendants into the schedule that resulted.  The defendants are the ones responsible because they initially delayed making their motions and failed to object to the return date when the Court proposed it at the October 3rd conference.

22. After bungling their first set of motions, the defense attorneys simply wanted another shot at maintaining the institutionalization of invidious discrimination against guys at New York on-premise retailers of alcohol, while ladies are protected from the same discrimination under the prior decisions in <u>Seidenberg v. McSorleys' Old Ale House, Inc.</u>, 317 F. Supp. 593 (1970) and 308 F. Supp. 1253 (1969).

23. On November 30th, the Court presented the defense attorneys a gift of two weeks to correct their botched motions that used the defunct dismissal standard and correct their fumbled replies that ignored the Amended Complaint.

24. The plaintiff class of men that had met all the Judges' deadlines and followed the rules naturally ended up with a lump of coal—two weeks over the Christmas Holidays to respond to "any new issues" in the defendants' additional papers.[5]  Of course, there aren't any new issues—it's still "state action" and "invidious discrimination," but that's the lump of coal wrapped in fancy paper to make it seem impartial.

25. In a procedurally identical situation, Judge Cedarbaum did **not** give the defendant a second chance.[6]  Defendant Dow Jones filed their Rule 12(b)(6) motion to dismiss, plaintiffs filed their opposition and one day later filed an amendment to the complaint.  The defendants replied four days later.  (Exhibit B, Docket Sheet entries 1-7, 9).  Judge Cedarbaum chose to rule on the key claim that had been asserted in both the amended and original complaints without giving the defendants a second chance.  Presumably the defendants in that case didn't bungle their papers, since the Judge dismissed the case.

26. In this action, the defense attorneys had already struck out and were on their way back to the dugout.  They had their chance and they choked.  But they got another time at bat just because they whined and cheated when it was inconvenient for them to live within the rules.  Had these advocates of preferential treatment for females hit a homerun with their first set of motion papers, it's unlikely the plaintiff class of men would have received a second chance,

---

[5] Perhaps if the plaintiff class's attorney had followed the lead of the defense attorneys and pleaded to the Court for more time, since the N.Y. County Lawyers Association library will be closed December 23 - 25, he would have received an extension.  But as a former card-carrying member of S.D.S., he knows full well the establishment—now a feminist one—is not about to disprove Sir William Blackstone's observation from the 1700s that "[w]omen are the favorite of the law."  Especially when it might threaten the transfer of wealth from the wallets of guys into the pocketbooks of ladies.

[6]  Independent Assoc. of Publishers' Employees v. Dow Jones & Co., 671 F. Supp. 1363 (1986).

6

since with each successive year following 1970, the institutions in America consider men less and less as members of the same species as all other humans.

27. When the dust finally settles, professional defense attorneys will have benefited from their delaying tactics, summer vacations, long holiday weekends, repeated failures to file their papers on time, and various misrepresentations because America is in a neo-Victorian era where preferential treatment that benefits females trumps the rights of men.

28. If the defense attorneys need more facts, the plaintiff class directs them to the "detailed amended complaint that is nine pages of 67 single spaced allegations … accompanied by 4 multi page exhibits," (Grossman's Reply Memorandum p. 5 and Reply Declaration ¶ 2).

Dated: New York, NY                                          /S/
       December 28, 2007                          _____
                                                              Roy Den Hollander (RDH 1957)
                                                              545 East 14 Street, 10D
                                                              New York, NY 10009
                                                              (917) 687 0652